Revised November 26, 2001

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 00-60048

_____


BOBBY OWENS, on behalf of himself
and all other employees of SeaRiver
Maritime, Inc., similarly situated,

                                        Plaintiff-Appellant,


        versus


SEARIVER MARITIME, INC.,

                                        Defendant-Appellee.


_____

Appeal from the United States District Court
for the Southern District of Mississippi

_____

November 6, 2001

Before GARWOOD, PARKER, and DENNIS, Circuit Judges.

GARWOOD, Circuit Judge:

    In this putative class action, the plaintiff, Bobby Owens
(Owens) seeks to recover damages from the defendant, SeaRiver
Maritime, Inc., (SeaRiver) pursuant to the maximum hour and
overtime provisions of the Fair Labor Standards Act (FLSA), 29
U.S.C. § 201 *et. seq.*  Owens appeals the district court's grant of

SeaRiver's motion for summary judgment, in which that court determined that Owens was exempt from FLSA coverage because he was "employed as a seaman" under 29 U.S.C. § 213(b)(6). We reverse the district court's summary judgment ruling that Owens is a seaman for purposes of the FLSA, and remand the case to the district court.

## Facts and Proceedings Below

SeaRiver owns and operates vessels which engage in the maritime transportation of petroleum and chemical products. Owens was employed by SeaRiver as an apprentice tankerman, tankerman, and senior tankerman with SeaRiver's inland fleet from 1990 to 1998. Owens's duties varied considerably with each of these positions. As an apprentice tankerman, Owens was essentially a deckhand who performed various tasks aboard barges and towboats. As both a tankerman and senior tankerman, Owens manned barges and towboats during transportation of cargo (or "product") on inland voyages between ports as distant as Texas, Iowa, and Illinois. As a tankerman and senior tankerman, Owens also inspected barges in preparation for towing, loading, and discharging of product; monitored and adjusted the trim and draft of barges during loading and discharge; checked and handled lines connecting barges to each other and the towboat; rearranged or broke up the tow in response to weather conditions or to allow passage through locks; painted and made minor repairs to the barges; maintained barge equipment, including the engines and pumps used for loading and discharging

-2-

product; and placed and removed navigation and mooring lights. Owens was also sometimes assigned as the "person in charge" of barges during the loading or discharge of product. The "person in charge" takes responsibility for the safety and integrity of the vessel and its equipment during loading and discharge.

In 1997, Owens was assigned to SeaRiver's Baton Rouge Strike Team. It is his service in this capacity which is at issue in the present case. As a member of the Strike Team, Owens was not a member of a towboat crew and was not tied to any vessel for the duration of a voyage. The shore-based Strike Team (including Owens) was assigned to SeaRiver's stationary "landing barge." The landing barge is a former oil barge which has been removed from navigation, and is permanently moored. On this barge is a metal building containing offices, housing for the Strike Team, a workshop, and a training room. The Strike Team performed work usually done by SeaRiver towboat crews, including loading and discharge of product, but the Strike Team worked on unattended or "tramp" barges that were neither towed by SeaRiver boats nor attended by SeaRiver crews. The skills used by Owens with the Strike Team were similar to those he used when he was a towboat crewman, although Owens attended the barges only for the purposes of loading and discharging product.

Owens sued SeaRiver in a putative class action seeking to recover overtime pay and damages for himself and others pursuant to

the maximum hours and overtime provisions of the FLSA. *See* 29 U.S.C. § 207(a)(1).[1] In response, SeaRiver asserted that Owens was "employed as a seaman" and therefore exempt from the FLSA's overtime provision under 29 U.S.C. § 213(b)(6).[2] The parties filed cross-motions for summary judgment on the issue of whether Owens, while a member of the Strike Team, was "employed as a seaman" and hence exempt from the provisions of the FLSA. The district court granted SeaRiver's motion and denied that of Owens. Owens now appeals the decision of the district court.

## Discussion

We review a grant of summary judgment *de novo*. *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 809 (5th Cir. 1991). Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

SeaRiver defends the district court's grant of summary judgment solely on the grounds that Owens was employed as a seaman pursuant to section 213(b)(6). Because there is no genuine dispute that SeaRiver is an "enterprise engaged in commerce," Owens was

---

[1] "Except as otherwise provided in this section, no employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

[2] "[Section 207] shall not apply with respect to ... any employee employed as a seaman...." 29 U.S.C. § 213 (b)(6).

covered by the FLSA unless he was employed as a seaman. 29 U.S.C. §§ 206, 207 (providing coverage under the FLSA for persons "employed in an enterprise engaged in commerce or in the production of goods for commerce"). Only Owens's status while working on the Strike Team is disputed; Owens does not dispute his status as a seaman when he was a towboat crewman.

I. The "Seaman" Exception

The FLSA does not define "seaman," and the precise meaning of that term has been the subject of a series of cases in this Circuit. In *Gale v. Union Bag & Paper Co.*, 116 F.2d 27 (5th Cir. 1940), the workers in question were employed as barge tenders, and were responsible for "attending to the lines and anchors, putting out running and mooring lights, pumping out bilge water, etc." *Id*. at 27. The employees worked, ate, and slept on board their assigned barges. The Court held that the employees were indeed seamen exempted from the terms of the FLSA. The Court focused on the services the employees rendered, noting that they were "of a maritime character" and "necessary ... to the navigation of the barges." *Id*. at 28. The Court did not articulate any distinction between the definition of "seaman" under the FLSA and the definition under the Jones Act.

Although barge tenders are seamen under the FLSA, industrial workers on dredge barges are not. In *Walling v. W.D. Haden Co.*, 153 F.2d 196 (5th Cir. 1946), the employees involved worked on

barges dredging shell material from the ocean floor. Again, the Court focused on the nature of the work performed by the employees, which in this case was mostly industrial work that related to the dredging operations. Even though the workers did participate in some maritime work, the Court held that they were not seamen under the FLSA because they were "employed more in industry than in shipwork, and are not exempt." *Id*. at 199. We also held in *W.D. Haden* that the definition of seaman under the FLSA was narrower than that used in the Jones Act. *Id*. at 198.

We revisited the distinction between the definition of seaman in the Jones Act and the FLSA in *Dole v. Petroleum Treaters, Inc.*, 876 F.2d 518 (5th Cir. 1989). Relying on *W.D. Haden*, the legislative history of the FLSA, and Department of Labor's regulations interpreting the Act, the Court held that "the definitions of seamen under the two acts are separate and independent of each other." *Id*. at 520.[3] According to the Court, the seaman status of a worker depended upon "the particular work performed by each employee and the relative proportion of actual seaman work as defined by the FLSA to nonseaman work." *Id*.

The most recent Fifth Circuit case to address the seaman exception is *Martin v. Bedell*, 955 F.2d 1029 (5th Cir. 1992). In

---

[3] Other Circuits have also reached the conclusion that the FLSA definition of "seaman" is narrower than the Jones Act definition. *Assn. v. Aubry*, 918 F.2d 1409, 1412 (9th Cir. 1990); *Sternberg Dredging Co. v. Walling*, 158 F.2d 678, 680-81 (8th Cir. 1947).

*Bedell*, the Secretary of Labor brought suit to force a catering service which employed cooks on "jack-up boats" servicing offshore rigs to comply with the overtime provisions of the FLSA. We "gave great weight" to the Department of Labor's regulations interpreting the seaman exception in the FLSA, and adopted the definition of "seaman" used in those regulations:

> "The regulations state that a 'seaman' is an employee who 'performs, as a master or subject to the authority, direction and control of the master aboard a vessel, service which is rendered primarily as an aid in the operation of [a] vessel as a means of transportation.' They also state that '[w]hether an employee is "employed as a seaman", within the meaning of the Act, depends upon the character of the work he actually performs and not on what it is called or the place where it is performed.' When a worker performs both seaman's work and nonseaman's work, he is a seaman unless his nonseaman's work is substantial in amount. [The Department of] Labor defines 'substantial' as work that 'occupies more than 20 percent of the time worked by the employee during the workweek.'" (footnotes omitted)

*Id*. at 1035-36 (citing 29 C.F.R. §§ 783.31, 783.33, 783.37 (1991)).[4] The Court then remanded the case to the district court to determine whether Blue Water's cooks spent more than twenty percent of their time preparing food for workers who were not actually engaged in the navigation of the boat on which the cooks lived and worked. According to the Court, if the cooks spent more

---

[4] The regulations have not changed in any presently relevant way since 1991. *See* 29 C.F.R. §§ 783.31-783.37 (2000).

than twenty percent of their time preparing food for non-crew workers (i.e., industrial workers on oil platforms who were not seamen) then the cooks did not fall within the definition of seaman under the FLSA.[5]  *Id.*

---

[5] We agree with the *Bedell* panel's reliance on the Department of Labor's regulations, and with their use of the "twenty percent rule" in the context of that case.  We are reluctant, however, to apply the twenty percent rule in a strict, mechanical fashion.  An employee is "employed as a seaman" under the FLSA unless the employee performs a substantial amount of nonseaman's work.  But, the amount of nonseaman's work an employee performs can vary from week to week.  For instance, a member of a vessel's crew may aid with the loading and unloading of cargo when the vessel is in port.  In a given week, that crew member may, *without* any change in basic assignment or position, spend more than 20 percent of his time performing nonseaman's work.  This should not mean that the crew member loses his seaman status for that week, and in such a case the crew member should remain a seaman unless, as a *general* matter, a substantial portion of his time was taken up by nonseaman's work.  To hold otherwise would produce an absurd result-crew members on vessels who spent the vast majority of their time at sea would, *without* any change in their basic assignment or position, lose their seaman status for the few weeks a year their vessels were in port.  That would also likely be inconsistent with *Gale*.  Rather than focus on a week by week analysis, the determining factors should be the general nature of the work the employee most often performs in his particular position and the primary purpose of the position the employee occupies. *Cf. Chandris, Inc. v. Latsis*, 115 S.Ct. 2172, 2191-92 (1995):

> "A maritime worker who spends only a small fraction of his working time on board a vessel is fundamentally land based and therefore not a member of the vessel's crew, regardless of what his duties are.  Naturally, substantiality in this context is determined by reference to the period covered by the Jones Act plaintiff's maritime employment, rather than by some absolute measure. . . . On the other hand, we see no reason to limit the seaman status inquiry, as petitioners contend, exclusively to an examination of the overall course of a worker's service with a particular employer. . . . When a maritime worker's basic assignment changes, his seaman status may change as well. . . . For example, we can imagine situations in which someone who had worked for years in an employer's shoreside

Under the law of this Circuit, if Owens performed a substantial amount of nonseaman's work, then he cannot properly be considered a seaman for purposes of the maximum hour provisions of the FLSA.

II. Seaman's Work

While Owens had several duties as a member of the Strike Team, the most substantial portion of his working time appears to have been related to loading and unloading petroleum products from the barges. The Strike Team was created in order to facilitate the loading and unloading of unmanned and undermanned tows of barges in Baton Rouge. And, while SeaRiver's fleet manager could not estimate what amount of time a tankerman on the Strike Team would spend in actual loading or unloading, he did testify that such a tankerman "certainly spends a good percentage of his time loading and unloading, but it's very variable." Owens did not testify to the exact percentage of his time spent loading and unloading, but he did indicate that when he was assigned to a barge it was for the

headquarters is then reassigned to a ship in a classic seaman's job that involves a regular and continuous, rather than intermittent, commitment of the worker's labor to the function of a vessel. Such a person should not be denied seaman status if injured shortly after the reassignment, just as someone actually transferred to a desk job in the company's office and injured in the hallway should not be entitled to claim seaman status on the basis of prior service at sea. If a maritime employee receives a new work assignment in which his essential duties are changed, he is entitled to have the assessment of the substantiality of his vessel-related work made on the basis of his activities in his new position."

purpose of loading or unloading that barge. Loading and discharging the barges was the primary purpose of Owens's job as a member of the Strike Team. If Owens's loading and unloading the barges as a member of the Strike Team is nonseaman's work under the FLSA, then Owens performed a substantial amount of nonseaman's work and hence cannot qualify as a seaman for purposes of the FLSA. SeaRiver in essence concedes that this is so. Clearly, it was not established as a matter of law that Owens was a seaman while a member of the Strike Team.

For purposes of the FLSA, work is seaman's work if it is "rendered primarily as an aid in the operation of [a] vessel as a means of transportation." 29 C.F.R. § 783.31. Workers who are primarily concerned with loading and unloading cargo are not, generally speaking, seamen within the meaning of the FLSA. *See* 29 C.F.R. § 783.36 (citing *McCarthy v. Wright & Cobb Lighterage Co.*, 163 F.2d 92 (2nd Cir. 1947)). The district court, however, held that it was "manifest from the descriptions of Owens' duties that his loading and unloading of cargo, as well as the other duties performed ... did, in fact, aid in the operation of SeaRiver vessels as a means of transportation...." The district court erred in holding that Owens's loading and unloading duties as a member of the Strike Team constituted seaman's work for FLSA purposes.

SeaRiver defends the district court's conclusion that Owens's loading and unloading activities were seaman's work primarily by

arguing that if a barge was loaded or unloaded improperly it could not be safely moved or towed, and could even break apart. Accordingly, SeaRiver argues, Owens' loading and unloading duties had special significance, and were in aid of the operation of the barges as a means of transportation. SeaRiver's argument assumes an extremely broad and unsupportable construction of "aid in the operation" of a "vessel as a means of transportation." Owens's loading and unloading duties related almost exclusively to removing petroleum products from the barge, not to moving or mooring the barge. Of course, the unloading and loading would have to be done in a safe or proper way, but that only *prepares* the vessel for navigation; it does not aid in its actual *operation* as a means of transportation. A rule that includes within the definition of "seaman's work" for FLSA purposes all work that prepares a vessel for navigation would include quite a few activities, most of which would not fit comfortably within a commonsense definition of "seaman's work."[6] And, SeaRiver's broad definition of "seaman's work" neglects the primary purpose of the loading and unloading–to get cargo on or off the barge. Even though Owens's loading and unloading duties were technical, specialized, and had to be done properly in order to assure proper navigation of the barge, they

---

[6] For example, a land-based worker who installs navigation equipment on vessels would be a seaman, as would a worker at a refueling dock–both tasks would, under SeaRiver's definition, aid in the operation of a vessel as a means of transportation to the same degree as loading or unloading cargo.

were still primarily cargo loading and unloading duties. While Owens's other duties may have aided in the operation of the vessel as a means of transportation, Owens's loading and unloading activities did not, at least not significantly and not as their primary purpose.

Because the primary purpose of Owens's position was to acomplish nonseaman's work (loading and unloading petroleum), Owens was not a seaman under the FLSA while a member of the Strike Team.[7]

## Conclusion

For the foregoing reasons, the decision of the district court granting summary judgment for SeaRiver is reversed, and the case is remanded for further proceedings consistent with this opinion.

REVERSED and REMANDED

---

[7]We do not suggest that Owens, while a member of the Strike Team, was not a seaman for Jones Act purposes.

-12-