# United States Court of Appeals
## For the First Circuit

No. 04-1519

MEGAN McLAUGHLIN,

Plaintiff, Appellant,

v.

BOSTON HARBOR CRUISE LINES, INC.;
MODERN CONTINENTAL CONSTRUCTION CO., INC.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

Before

Lynch, Lipez, and Howard, Circuit Judges.

Vincent P. Dunn, with whom Elizabeth B. Crouch and Dunn and Dunn were on brief, for appellant.
Richard D. Wayne, with whom Brien E. Lewis and Hinckley, Allen & Snyder LLP were on brief, for appellees.
Carol B. Feinberg, with whom Howard M. Radzely, Solicitor, Steven J. Mandel, Associate Solicitor, and Paul L. Frieden, Counsel for Appellate Litigation, were on brief, for U.S. Department of Labor, amicus curiae.
Stephen E. Bers, with whom Whiteford, Taylor & Preston, LLP was on brief, for National Association of Passenger Vessel Owners, Inc., amicus curiae.

August 17, 2005

**LYNCH**, **Circuit Judge**.  The ultimate issue in this case revolves around the exemption for "any employee employed as a seaman" from the overtime requirements of the Fair Labor Standards Act of 1938 ("FLSA").  29 U.S.C. § 213(b)(6).  The plaintiff, Megan McLaughlin, worked on a Boston-based commuter ferry owned and operated by her employer, Boston Harbor Cruise Lines, Inc ("Boston Harbor").[1]  She sued, alleging that Boston Harbor was not paying her overtime pay that was due to her under the FLSA, 29 U.S.C. § 207, as well as similar Massachusetts law.

In response, Boston Harbor filed a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), noting that any employee employed as a "seaman" was exempt from the overtime requirements under the FLSA, and alleging that, based on McLaughlin's complaint, she could prove no set of facts that would take her outside of this exemption.  The district court agreed with Boston Harbor and dismissed the case.  Because the applicability of the "seaman" exemption to an individual like McLaughlin is a fact-dependent issue that is best decided after a full factual record has been compiled, it was error to dismiss this case at the 12(b)(6) stage.  We reverse, vacate the dismissal, and remand for further proceedings.

---

[1]The role played by the other defendant in this case, Modern Continental Construction Co., is unclear.  Throughout the opinion, we refer to both defendants simply as "Boston Harbor."

**I.**

Complaint and Procedural History

Since this case was decided on a 12(b)(6) motion to dismiss, and no discovery has occurred, we recite the allegations as they appear in McLaughlin's complaint.

In her complaint filed May 14, 2003,[2] McLaughlin alleges that she was employed by Boston Harbor from June 1997 through December 2002, working on one of its commuter boats for approximately 80 hours per week in the summer and approximately 60 hours per week in the winter. She was paid an hourly wage of between $8 per hour and $11.50 per hour and, she alleges, was not paid overtime for her hours in excess of 40 per week.

McLaughlin's allegations about the nature of her employment on the commuter ferry are quite sparse, occupying only a few sentences. She alleges that her "duties" throughout her employment were those of a "deckhand." "For example, she took passenger's tickets, loaded and unloaded passengers, collected fares, stood by at the dock to ensure safe exiting of passengers and swept the boat and dock areas." She further alleges that "[f]or more than 90% of her average work day, she engaged in

---

[2]The complaint was filed "on behalf of herself and all others similarly situated." It is unclear from the complaint and accompanying documents whether McLaughlin sought to bring a class action or instead a collective action under the FLSA. See 29 U.S.C. § 216(b). We have no occasion to address these procedural issues.

activities <u>not</u> related to the navigation" of the commuter ferry. She added that she was <u>not</u> "actively engaged in the operation or navigation of the commuter vessels upon which she worked" and that "[s]he did not operate the vessels, chart courses, monitor radar or perform any other duties related to the navigation of the subject commuter vessels."

After Boston Harbor filed its motion to dismiss and accompanying memorandum of law, the district court scheduled a hearing for March 11, 2004. However, no such hearing was ever held; on the day that was scheduled for the hearing, the district court granted Boston Harbor's motion to dismiss "substantially for the reasons advanced in the defendants' papers." No written opinion was issued.

McLaughlin filed a timely appeal. On appeal, two entities, the Secretary of Labor and the National Association of Passenger Vessel Owners, Inc. (an industry trade association), have filed amicus briefs with us. The district court did not have the benefit of these amici.

<u>Arguments on Appeal</u>

On appeal, McLaughlin relies heavily on her view of the interpretative regulations issued by the Department of Labor, <u>see</u> 29 C.F.R. pt. 783. McLaughlin points out that the regulations state that it is the "character of the work" performed, and not "what it is called or the place where it is performed," that

determines whether someone is "employed as a seaman" -- thus, the fact that she works on a boat is not determinative. 29 C.F.R. § 783.33. Further, McLaughlin emphasizes the Labor Department's formulation that an employee will be regarded as a "seaman" for purposes of the exemption only if she performs "service which is rendered primarily as an aid in the operation of such vessel as a means of transportation, provided [s]he performs no substantial work of a different character." 29 C.F.R. § 783.31. McLaughlin argues that because most of her work involved taking tickets, loading and unloading passengers, and cleaning the boat, she does not meet this test. Finally, McLaughlin states that the legislative history of the FLSA makes it clear that the exemption should be interpreted narrowly and differently from other acts like the Jones Act, see 46 U.S.C. App. § 688(a), so as not to exclude too many workers from FLSA protections. Although McLaughlin argues as though she is entitled to judgment in her favor, she also argues that dismissal was wrong because she is entitled to discover additional facts.

The Secretary of Labor, in her amicus brief in support of McLaughlin, argues essentially that McLaughlin's proposed interpretation and application of the Department of Labor regulations dealing with the "seaman" exemption is correct, reflects the Secretary's own "longstanding interpretation" of these regulations, and should be adopted by the court.

Boston Harbor also relies heavily on the Department of Labor regulations, but it interprets them differently. In its view, the regulations classify workers into three groups: (1) "water transportation workers, e.g. members of the crew," (2) employees, such as concessionaires, who do not report to the master of the ship, and (3) "industrial employees." See 29 C.F.R. §§ 783.32, 783.33, 783.34. Boston Harbor believes that the first group falls under the exemption, while the second and third do not. It views all of McLaughlin's duties as falling into the first group. The Secretary's contrary interpretation of the regulations articulated in her amicus brief, Boston Harbor argues, is entitled to no deference because it is inconsistent with the Secretary's past interpretations and has been asserted for the first time in a litigation context. Boston Harbor also argues that the ordinary meaning of the term "seaman" would include any "water transportation workers," including someone like McLaughlin, and that the legislative history makes it clear that Congress intended to give the term its ordinary meaning. Finally, Boston Harbor argues that the definition of the term "seaman" within the FLSA should not be overly narrow, and should generally match the definition given in other statutes, so that "seamen" receive both the special employment benefits and special burdens associated with their profession. Cf. Harkins v. Riverboat Servs., Inc., 385 F.3d 1099, 1103 (7th Cir. 2004) (applying rebuttable presumption that

-6-

someone classified as "seaman" for purposes of other employment statutes should be recognized as a "seaman" under FLSA as well).

In its amicus brief in support of Boston Harbor, the National Association of Passenger Vessel Owners, Inc. attacks some of the Department of Labor's regulations themselves (most notably the 20 percent rule in 29 C.F.R. § 783.37), as well as the interpretation of those regulations proposed in the Secretary's amicus brief. It asserts that the analysis called for by the regulations, especially as interpreted by the Secretary, is unworkable in light of ordinary industry practices because it requires fine-grained assessments of the various tasks an employee performs as well as how much time she devotes to each of her tasks. See, e.g., Harkins, 385 F.3d at 1104. The Association concedes that the regulations themselves (as opposed to the Secretary's interpretation of them in the amicus brief) deserve some deference, but it nonetheless argues in favor of affirmance.

## II.

We review a motion to dismiss on 12(b)(6) grounds de novo. See, e.g., Zimmerman v. Cambridge Credit Counseling Corp., 409 F.3d 473, 475 (1st Cir. 2005). The standard for granting a motion to dismiss is an exacting one: "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." Conley v.

-7-

_Gibson_, 355 U.S. 41, 46 (1957).  As well, we must assume that all well-pleaded allegations in McLaughlin's complaint are true, and we must indulge all reasonable inferences from these allegations in her favor.  See, e.g., _Centro Medico del Turabo, Inc._ v. _Feliciano de Melecio_, 406 F.3d 1, 5 (1st Cir. 2005).

_FLSA Claim_

Because the FLSA itself contains no definition of a "seaman," the Department of Labor regulations play a role.  At the outset, we distinguish the regulations themselves from the Secretary's interpretation of those regulations in the amicus brief filed with this case.

There is no dispute in this case about the level of deference owed to the regulations themselves.  All parties agree that some deference is owed the regulations.  The Secretary of Labor herself calls for application of deference under _Skidmore_ v. _Swift & Co._, 323 U.S. 134 (1944), and no more deference than that. No one involved in this case, including the Secretary, is calling for application of the higher, more formal type of deference explained in _Chevron U.S.A., Inc._ v. _Natural Resources Defense Council, Inc._, 467 U.S. 837 (1984).

As for the Secretary's interpretation of the regulations in her amicus brief, Boston Harbor argues that the Secretary's interpretation is entitled to no weight at all because it was formulated for the first time during litigation and is inconsistent

with the agency's own prior approach. See, e.g., Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 212-13 (1988) ("Deference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate."); Alliance to Protect Nantucket Sound, Inc. v. United States Dep't of the Army, 398 F.3d 105, 112 n.5 (1st Cir. 2005) ("[D]eference is not due to interpretations that are post hoc rationalizations offered by an agency seeking to defend past agency action against attack . . ., or to interpretations that have varied erratically over time." (internal quotation marks and citations omitted)). We do not now know whether the Secretary's interpretation is novel or instead consistent with the agency's long-standing practice. Since, as we explain below, interpretation of the regulations themselves is premature at this stage, it is likewise premature for us to discuss the consistency of the Secretary's interpretation with past practice.

Both parties, as well as the Secretary, rely heavily on the regulations: the crux of their dispute is about how the regulations should be interpreted.[3]   The parties also have

---

[3]It is true that one of the amici, the National Association of Passenger Vessel Owners, Inc., challenges some of the Department of Labor's regulations based on their unworkability in light of industry practice.   The Association's concerns about the workability of the scheme established by some of the regulations are fact-intensive issues that, like the other questions in this case, are best dealt with after a full record has been established. Many of the challenges may prove unnecessary, depending on how the factual record develops during discovery, and all of the challenges

subsidiary disputes, described above, about the meaning of the legislative history and the relationship between the use of the term "seaman" in the FLSA and the use of that term in other statutes, such as the Jones Act.  In the briefs, the parties and amici appear to treat this case as though the core issues involved can and ought to be resolved at this 12(b)(6) stage; the district court also fell into this trap.

Any interpretation of the FLSA or its regulations, at this stage of the proceedings, would be error because it would be premature.  We need not and do not engage in any such interpretation.  In particular, we decline the Secretary's invitation for us to adopt her preferred interpretation of the regulations now, before any factual context has been developed.

The statute, the regulations, and the case law, by contrast, outline an approach that is quite fact-intensive.  The test according to the regulations "depends upon the character of the work [an employee] actually performs," and specifically upon whether that employee performs service "as master or subject to the authority, direction, and control of the master aboard a vessel, service which is rendered primarily as an aid in the operation of such vessel as a means of transportation."  29 C.F.R. §§ 783.31,

require information about the nature of the industry and the application of the Secretary's test that we do not yet have.  These challenges may, of course, be raised and explored below on remand.

783.33. In applying this test, the regulations make distinctions that are factually intricate: they state, for example, that surgeons and cooks onboard ships will generally fall within the exemption, but stevedores or roust-abouts whose principal duties require them to load or unload the vessel in port will not fall under it. See id. §§ 783.32, 783.33. The test becomes especially complicated by the fact that many maritime-industry employees -- like McLaughlin -- perform multiple tasks during the course of the day. In such cases, the regulations state that the exemption will not apply if a "substantial amount of work of a different character" is performed by the employee at issue, 29 C.F.R. § 783.31; "substantial" is defined under the regulations as "more than 20 percent of the time worked by the employee during the workweek," 29 C.F.R. § 783.37.

The Supreme Court, in a Jones Act case, has recently stated that the inquiry into whether someone is a "seaman" is bound to be a fact-intensive one: "The inquiry into seaman status is of necessity fact specific; it will depend on the nature of the vessel and the employee's precise relation to it." McDermott Int'l, Inc. v. Wilander, 498 U.S. 337, 356 (1991). The Court has suggested that the "seaman" exemption under the FLSA is no exception to the rule that the definition of "seaman" is fact intensive. See Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 713-14 (1986). We made a similar observation in our only case to apply the FLSA's

-11-

"seaman" exemption. See Walling v. Bay State Dredging & Contracting Co., 149 F.3d 346, 351 (1st Cir. 1945) ("The line of demarcation between seamen and non-seamen is not distinctly drawn, and probably cannot be. It depends a good deal upon the facts in each case, especially upon the character of the work that is principally engaged in.").

Finally, other circuits, whether heavily guided by the Department of Labor regulations or not, have also taken an approach that often turns heavily on factual distinctions about the sort of work the plaintiff is performing. In Harkins, a case decided at trial which involved employees who worked on a gambling riverboat in Chicago, the court noted that application of the exemption was not subject to any obvious per se rules but rather depended crucially on the kinds of duties that the employees performed:

> A blackjack dealer does not become a seaman by virtue of leaving his job at Harrah's land-based casino and taking a job at Harrah's riverboat casino, but likewise a helmsman does not cease to be a seaman because he transfers to a casino boat that spends most of its time moored. It was for the jury to decide whether the three plaintiffs whose overtime claims survived to trial were more like the helmsman than like the blackjack dealer.

385 F.3d at 1104; see also Owens v. Seariver Mar., Inc., 272 F.3d 698, 701-04 (5th Cir. 2001); Martin v. Bedell, 955 F.2d 1029, 1036 (5th Cir. 1992); Worthington v. Icicle Seafoods, Inc., 796 F.2d 337, 338 (9th Cir. 1986); Knudsen v. Lee & Simmons, Inc., 163 F.2d 95, 95-96 (2d Cir. 1947).

-12-

Unsurprisingly, then, courts have generally decided the issue of whether a given individual falls within the exemption after trial, see, e.g., Icicle Seafoods, 475 U.S. at 710; Harkins, 385 F.3d at 1101; Martin, 955 F.2d at 1031, Knudsen, 163 F.2d at 95, or on summary judgment, see, e.g., Owens, 272 F.3d at 700, but not on a Rule 12(b)(6) motion. None of the cases that Boston Harbor places weight upon, so far as we can ascertain, were decided by a 12(b)(6) motion before the factual record had even been established. See Harkins, 385 F.3d at 1101; Walling v. Keansburg Steamboat Co., 162 F.2d 405, 406-08 (3d Cir. 1947); Weaver v. Pittsburgh S.S. Co., 153 F.2d 597, 598-99 (6th Cir. 1946); Bay State Dredging, 149 F.2d at 347-48 (district court decided on stipulated facts); Helena Glendale Ferry Co. v. Walling, 132 F.2d 616, 618 (8th Cir. 1942).

Because the legal question presented in this case is so fact-intensive, and because the application of the exemption and regulations to plaintiff's job cannot be determined from the several sentences of bare bones pleadings, we must remand the case for further fact-finding. See, e.g., Cavalier Tel., LLC v. Verizon Va., Inc., 330 F.3d 176, 192 (4th Cir. 2003) ("necessarily fact-bound" questions are normally not decided by a motion to dismiss); Krodel v. Young, 748 F.2d 701, 712 (D.C. Cir. 1984) (same). Of course, even in this fact-specific area, dismissal under 12(b)(6) may sometimes be appropriate, but only where it is crystal clear

-13-

under established law that the plaintiff is a "seaman" under the FLSA. That is not this case, and the district court erred in dismissing this case at the 12(b)(6) stage. Not only is there no need to go further, but it would be unwise to do so.[4]

Massachusetts State Law Claim

The Massachusetts state overtime statute, Mass. Gen. Laws ch. 151, § 1A, contains an exemption for "any employee who is employed as a seaman," thus using essentially identical language as the FLSA. Id. § 1A(10). There are no cases construing the Massachusetts exemption. The parties agree in their briefs, though, that a key factor is interpreting the Massachusetts statute is the interpretation of analogous federal law. See Goodrow v. Lane Bryant, Inc., 732 N.E.2d 289, 294 (Mass. 2000).[5] Interpretation of the Massachusetts "seaman" exemption may depend heavily on interpretation of the FLSA's "seaman" exemption. Since, as we have explained, interpretation of the FLSA is premature, the

---

[4]We do not suggest that it would be inappropriate to dispose of this or any other case at summary judgment if the summary judgment standards are met. We also note that the district court was not given the benefit of the views expressed, for the first time on appeal, by the two amici. The district court may wish to consider those views on remand.

[5]Boston Harbor also points out that, according to Goodrow, where a statute does not effectively define a term, that term should be defined in accordance with the common meaning of the word and in light of the historical circumstances of its enactment. See 732 N.E.2d at 294. We have found no relevant legislative history, and we think it premature to interpret the common meaning of the term "seaman" or to apply it before a factual record has been developed.

-14-

district court's dismissal of the Massachusetts state law claim must likewise be vacated, and the claim must be remanded for further consideration.

### III.

The district court order dismissing McLaughlin's complaint is **<u>reversed</u>**, the judgment is **<u>vacated</u>**, and the case is **<u>remanded</u>** for further proceedings consistent with this opinion. Costs are awarded to McLaughlin.

(concurrence follows)

**LIPEZ, Circuit Judge, concurring.** I agree with the majority that more factual development is needed before the merits of McLaughlin's claim can be adjudicated. The district court erred in concluding otherwise. However, the district court granted the motion to dismiss in response to specific arguments made by Boston Harbor. Indeed, it said that it was granting the motion "substantially for the reasons advanced in the defendants' papers." I wish to explain why, in my view, those specific reasons did not justify the district court's ruling.

## I.

Boston Harbor made three arguments in the district court in support of its motion to dismiss. First, citing <u>Walling</u> v. <u>Bay State Dredging Co.</u>, 149 F.2d 346 (1st Cir. 1945), Boston Harbor argued that the FLSA's legislative history showed that the term "seaman" referred "solely to water transportation workers."[1] In Boston Harbor's view, McLaughlin's duties as a so-called "deckhand"

---

[1] <u>Bay State Dredging</u> was decided on stipulated facts. The plaintiffs worked on a hydraulic dredge, a floating platform equipped with a pump that can suck mud from a river bottom and propel it to shore through a pipeline. The personnel included "a captain, one operator, one mate, four deck-hands, one oiler, one fireman, a cook, a mess-boy and a watchman." 149 F.2d at 348. The captain "usually has some knowledge of navigation." <u>Id.</u> The dredge has some independent ability to move, although it may remain in one place for several weeks when working. When working far from Boston, the employees would live on board; when close to Boston, many would go ashore every day to sleep. Based on these facts, the court found that "[t]heir work was essentially connected with excavation and not with navigation," <u>id.</u> at 349, they did not come within the seaman exemption of the LFSA, and they were thus entitled to overtime pay.

on a commuter ferry make her a "water transportation worker" and thus not entitled to overtime pay. Second, Boston Harbor cited regulations issued by the Department of Labor on the scope and meaning of the seaman exemption. See 29 C.F.R. pt. 783 ("Application of the Fair Labor Standards Act to employees employed as seamen"). Boston Harbor claimed that those regulations cited case law excluding from overtime pay "all personnel employed by the owner on board ferries." See Walling v. Keansburg Steamboat Co., 162 F.2d 405 (3d Cir. 1947); Helena Glendale Ferry Co. v. Walling, 132 F.2d 616 (8th Cir. 1942). Boston Harbor noted, too, that the regulations say that "Congress intended to exempt . . . only workers performing water transportation services." 29 C.F.R. § 783.29(a). Third and finally, noting that it could not find any reported cases in which deckhands on commuter ferries were entitled to overtime pay under the FLSA, Boston Harbor interpreted that absence of case law as proof that McLaughlin's claim was legally unprecedented and baseless. On appeal, Boston Harbor essentially renewed these arguments.

## II.

As one can see from the summary of Boston Harbor's arguments, they draw heavily on the FLSA's legislative history and the Department of Labor's regulations interpreting the scope and meaning of the seaman exemption. Therefore, before addressing

Boston Harbor's specific arguments, I wish to discuss briefly that legislative history and the Department's regulations.

## A. The Fair Labor Standards Act and the "seaman" exemption

An early draft of the bill that became the FLSA did not exclude seamen from its overtime provisions. Bay State Dredging, 149 F.2d at 349. The chief proponents of the exclusion were seamen themselves who asked Congress to be excluded--specifically, two seamen's unions, the Sailors' Union of the Pacific and the National Maritime Union. Professing themselves happy with the extensive regulatory scheme already in place for seamen, the unions feared unintended consequences of further Congressional tinkering.[2] For

---

[2] Particular reference was made to the Merchant Marine Act of 1936, Pub. L. No. 74-835, 49 Stat. 1985, which among other things created the United States Maritime Commission. By passing the Act, Congress intended to "foster the development and encourage the maintenance" of a merchant marine able to serve the country's commercial needs while also "capable of serving as a naval and military auxiliary in time of war or national emergency." Title I, § 101. The Act did not say anything about overtime pay; the Commission was "directed to investigate the employment and wage conditions in ocean-going shipping" and then develop "minimum-manning scales and minimum-wage scales and reasonable working conditions" on board certain subsidized vessels. Title III, § 301(a). Those duties are assigned now to the Secretary of Transportation. See 46 U.S.C. App. § 1131.

The Maritime Commission no longer exists. It was abolished and its functions transferred to the Federal Maritime Board and the Secretary of Commerce. See 15 Fed. Reg. 3178 (May 24, 1950). Eleven years later, the Federal Maritime Board was abolished and its functions transferred to what is now called the Federal Maritime Commission, which still exists today. See 26 Fed. Reg. 7315 (Aug. 12, 1961). Its regulations appear at 46 C.F.R. pts. 500-599.

example, the representative of the Sailors' Union of the Pacific

testified:

> Our union does not like to see any further or additional
> legislation enacted to cover a group of workers already
> so well covered, which might tend to create some
> confusion in labor relations, which are now on the road
> to practical and successful operation. Therefore, I ask
> on behalf of the Sailors' Union of the Pacific, that the
> bill be so written as to exclude the seamen from the
> operation of the provisions of the bill.

Joint hearings on S. 2475 and H.R. 7200 before the Sen. Comm. on

Educ. and Labor and House Comm. on Labor, 75th Cong. 545 (quoted in

Bay State Dredging, 149 F.2d at 349). Similarly, the National

Maritime Union's representative explained his understanding

> that the way has been left open for the proposed Labor
> Standards Board [created by the FLSA] to have
> jurisdiction over those classes of workers who are
> engaged in transportation. While this may not have an
> unfavorable effect upon the workers engaged in
> transportation by water, we feel that it may conflict
> with the laws now in effect regarding the jurisdiction of
> the government machinery now set up to handle those
> problems.
> . . . .
> . . . . [W]e feel that for the present time that the
> [U.S. Maritime Commission's] jurisdiction should not be
> hampered or impaired by any legislation that would be
> conflicting.

Joint hearings on S. 2475 and H.R. 7200 before the Sen. Comm. on

Educ. and Labor and House Comm. on Labor, 75th Cong. 545 (quoted in

Bay State Dredging, 149 F.2d at 349).

This history suggests that Congress excluded seaman from

the FLSA's overtime protections not because of a substantive policy

judgment about the wisdom of paying them overtime, but primarily

for procedural reasons--i.e., to avoid jurisdictional conflict. "Seamen were exempted from operation of the Fair Labor Standards Act of 1938 so as to avoid conflict of jurisdiction and confusion of labor relations." Keansburg Steamboat Co., 162 F.2d at 408; see also Weaver v. Pittsburgh Steamship Co., 153 F.2d 597, 599-600 (6th Cir. 1946) ("On the floor of the Senate it was explained by Senator Black[3] that, with respect to exemptions, it had been the policy of the Committee to write the bill so as not to conflict with the regulations of hours and wages when given to other governmental agencies . . . .").

Although the definition of "seaman" under the FLSA has generated a number of court decisions over the years, all that attention has not produced much in the way of clear rules.[4] As we observed in 1945: "The line of demarcation between seaman and non-seaman is not distinctly drawn, and probably cannot be. It depends a good deal upon the facts in each case, especially upon the character of the work that is principally engaged in." Bay State

---

[3] At the time, Hugo L. Black was a senator from Alabama. Shortly thereafter, President Franklin D. Roosevelt nominated him to serve on the Supreme Court, the Senate confirmed him, and he was sworn in as an Associate Justice on August 14, 1937.

[4] See, e.g., Harkins v. Riverboat Services, Inc., 385 F.3d 1099 (7th Cir. 2004); Owens v. SeaRiver Maritime, Inc., 272 F.3d 698 (5th Cir. 2001); Pacific Merchant Shipping Ass'n v. Aubry, 918 F.2d 1409 (9th Cir. 1990); Dole v. Petroleum Treaters, Inc., 876 F.2d 518 (5th Cir. 1989).

Dredging, 149 F.2d at 351.  Almost sixty years later, those words are still apt.

## B. The Labor Department's regulations

Soon after the FLSA's enactment into law, the Secretary of Labor, Frances Perkins, issued Interpretive Bulletin No. 11, which provided the Labor Department's views on how the seaman exemption should be interpreted.  The heart of the Labor Department's interpretation--the so-called "aid to transportation" test--derives from that interpretive bulletin, which states in part that an

> [e]mployee will ordinarily be regarded as 'employed as a seaman' if he performs, as master or subject to the authority, direction, and control of the master aboard a vessel, service which is rendered primarily as an aid in operation of such vessel as a means of transportation, provided he performs no substantial amount of work of a different character.

Those words now appear unchanged at 29 C.F.R. § 783.31 ("Criteria for employment 'as a seaman'"), along with some added citations to legislative history and case law.  In 1948, the Labor Department made one change, deciding that an employee performs a "substantial amount of work of a different character" if that different work occupies more than 20 percent of his time during a workweek.  See 29 C.F.R. § 783.37.  Since 1948, the parties agree that there have been no substantive changes to these interpretive regulations.[5]

_____

[5] In 1961, Congress amended the FLSA to, among other things, extend the law's minimum-wage provisions to seamen working on American-flagged vessels.  (Before, no seamen had been entitled to

-21-

The Labor Department's regulations give some content to the vague concept of being "employed as a seaman" by stressing the character of the work performed by the employee. We echoed that approach in Bay State Dredging, where we described the character of a seaman's work as "essentially maritime." Specifically, we said that "[w]hether a worker is a seaman, as the term is commonly used, depends on the character of his duties. If they are essentially maritime he is a seaman. Otherwise he remains a landsman." 149 F.3d 349; see also Harkins, 385 F.3d at 1102 (To qualify as a seaman, "the employee must do maritime-type work . . . .") (emphasis added).

The regulations offer a few examples of workers who typically would or would not meet the Department's "aid to transportation" test. So, for example, we read that "[t]he term 'seaman' includes members of the crew such as sailors, engineers, radio operators, firemen, pursers, surgeons, cooks, and stewards,

the minimum wage.) Based on that amendment, the Fifth Circuit decided that Congress had acquiesced in the Labor Department's announced interpretation:

> In 1961, Congress revisited seamen coverage making a few changes. [Congress] did not seek, however, to change the interpretive definition given by the Secretary as to who are seamen. See Lorillard v. Pons, 434 U.S. 575, 580 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change.").

Petroleum Treaters, 876 F.2d at 522 (citation omitted).

-22-

if their service is of type described in § 783.31." Id. § 783.32. On the other hand, the term "seaman" typically does not include the following types of workers: concessionaires and their employees aboard a vessel, as well as dredge-workers, stevedores, and roustabouts. Id. § 783.33. Regardless of these lists of job titles, whether a worker is "employed as a seaman" ultimately depends on "the character of the work he actually performs and not on what it is called or the place where it is performed." Id.

The Labor Department's description in its regulations of the origin of the seaman exemption also comports with the history recited in Bay State Dredging. See 29 C.F.R. § 783.29 ("Adoption of the exemption in the original 1938 Act"). According to that description, Congress excluded seamen from the FLSA's overtime provisions to avoid jurisdictional overlap with admiralty law. In doing so, Congress intended to give the term "seaman" its "commonly accepted meaning, namely, one who is aboard a vessel necessarily and primarily in aid of its navigation." Id. § 783.29(c). At the same time, however, that ordinary meaning "is governed by the context in which it is used and the purpose of the statute in which it is found." Consequently, in the context of a remedial statute like the FLSA, "giving a liberal interpretation of the meaning of the term 'seaman' . . . would frustrate rather than accomplish the legislative purpose" by excluding too many workers from the FLSA's protective ambit. Id.

-23-

## III.

I turn now to an evaluation of the three arguments that convinced the district court that McLaughlin's complaint was insufficient as a matter of law.

### A. "Water transportation workers"

In the district court and here, Boston Harbor argues that the phrase "water transportation worker" decides this case now because McLaughlin, according to her own allegations, is a "water transportation worker." That phrase appears once in Bay State Dredging. See 149 F.2d at 350. A variation of the phrase also appears in the Labor Department's regulations. See 29 C.F.R. § 783.29(a) (the "general pattern of the legislative history" shows that Congress intended to exclude "workers performing water transportation services" from the FLSA's overtime provisions). Boston Harbor asks, "If Plaintiff is not a water transportation employee, what is she?"

Boston Harbor misconceives the phrase's importance to the analysis for two reasons. First, Boston Harbor simply takes the phrase out of context. In Bay State Dredging, we said that it was "apparent that in the hearing both [the union representative] and [Senator Black] used the term 'seamen' with its common meaning, referring solely to water transportation workers." 149 F.2d at 350. It is not clear why Boston Harbor finds the term "water transportation worker" any more useful than the term "seaman"

itself, which at least has the virtue of being the term that Congress chose to use in the statute.  Consonant with that fact, the focus of our analysis in <u>Bay State Dredging</u> remained on the words of the statute: whether an employee was "employed as a seaman."  29 U.S.C. § 213(b)(6).  Our focus must remain the same in this case.

Second, Boston Harbor exaggerates the phrase's importance when it claims that "courts have consistently defined the term 'seamen' [sic] as a water transportation worker."  Boston Harbor does not cite any cases for that proposition (besides, of course, <u>Bay State Dredging</u>), and I could not find any cases to support that claim.  Indeed, far from Boston Harbor's representation that courts have used the phrase "consistently," the phrase has not appeared in any federal case since <u>Bay State Dredging</u> in 1945.[6]

Ultimately, Boston Harbor's reliance on this phrase is a distraction from the inescapably fact-specific nature of the seaman inquiry:

> [T]he words of the exemption are: "Employees <u>employed as</u> <u>seamen</u>".  The italicized words mean something; they are not mere tautology.  They warn us to look to what the employees do, and not to rest on a mere matter of a name, or the place of their work. . . .  [W]hat he does is expressly made the test of exclusion.

<u>Mitchell</u> v. <u>Stinson</u>, 217 F.2d 210, 215 (1st Cir. 1954) (quoting <u>Walling</u> v. <u>W.D. Haden Co.</u>, 153 F.2d 196, 199 (5th Cir. 1946)).  If

---

[6] This result holds true when searching for variants of the phrase, too, like "workers engaged in transportation by water."

McLaughlin's duties are "essentially maritime," then she is a seaman. Bay State Dredging, 149 F.2d at 349. Based solely on the allegations in her complaint, there is at least reason to question whether McLaughlin qualifies as a seaman.

Moreover, the Supreme Court has cautioned that, because of the FLSA's "remedial and humanitarian" purposes, the statute "must not be interpreted or applied in a narrow, grudging manner." Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 597 (1944). Exemptions from the duties imposed by the FLSA on employers are to be "narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960); see also Reich v. Newspapers of New Eng., Inc., 44 F.3d 1060, 1070 (1st Cir. 1995) (quoting Arnold). McLaughlin's duties as alleged in her complaint were not so obviously maritime in nature that she was "plainly and unmistakably" ineligible for overtime pay. Arnold, 361 U.S. at 392.

To be sure, in the Jones Act, which allows negligence suits to be brought against shipowners by "[a]ny seaman" injured "in the course of his employment," 46 U.S.C. App. § 688(a), the term "seaman" has been defined broadly. We have acknowledged this divergence before: "[T]he term 'seamen,' used in various Acts," is a "flexible term[], the meaning of which depends on the

-26-

circumstances in which [it] is used and the purpose of the particular statute in which [it] occurs." Bay State Dredging, 149 F.2d at 351; see also Harkins, 385 F.3d at 1102 ("[D]ecisions interpreting the term 'seaman' in other statutes do not necessarily control its meaning in the FLSA.").

Indeed, the divergent meanings of "seaman" make sense when one considers the different roles played by the term in the two statutes, both of which are remedial in nature. In the Jones Act, workers defined as "seamen" are <u>included</u> in the statute's protections, while in the FLSA seamen are <u>excluded</u> from overtime pay. Therefore, in context, the expansive definition of "seaman" furthers the Jones Act's purposes. Here, by contrast, an expansive definition of "seaman" informed solely by the unilluminating phrase "water transportation worker" would undercut the FLSA's purposes.[7]

---

[7] The Jones Act is critical in the panoply of legal protections that Congress has provided for seamen. The Supreme Court has outlined a two-step test to determine if someone is a "seaman" under the Jones Act. First, "an employee's duties must contribut[e] to the function of the vessel or to the accomplishment of its mission." McDermott Int'l v. Wilander, 498 U.S. 337, 355 (1991). Second, "a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." Chandris, Inc. v. Latsis, 515 U.S. 347, 368 (1995). See also Stewart v. Dutra Constr. Co., __ U.S. __ (2005) (construing the meaning of the term "vessel" in the LHWCA).

Under the Jones Act, then, many workers are recognized as seamen even though their work has little or nothing to do, strictly speaking, with operating the vessel--e.g., "firemen, engineers, carpenters, and cooks." McDermott, 498 U.S. at 343 (1991). The Court has rejected a narrow "aid to navigation" test in this respect. In the context of the FLSA, however, we rejected a broad test that would define the term "seaman" as being "flexible enough

-27-

**B. The Labor Department's "aid to transportation" test**

Boston Harbor maintains that the Labor Department's regulations, including their reference to "workers performing water transportation services," 29 C.F.R. § 783.29(a), justify dismissing McLaughlin's claim. To reiterate, the Labor Department's test provides that "[a]n employee will ordinarily be regarded as 'employed as a seaman' if he performs . . . subject to the authority . . . of the master aboard a vessel, service which is rendered primarily as an aid in operation of such vessel as a means of transportation." 29 C.F.R. § 783.31.

Boston Harbor essentially says that the Department's test, like the statutory term "seaman" and Bay State Dredging's phrase "water transportation worker," must be read broadly. Although McLaughlin did not perform any duties related to the operation of the ferry itself, like navigation or steering, she did perform various duties related to the passengers that the ferry transports.[8] Therefore, according to Boston Harbor, by aiding the passengers and thus contributing to the vessel's overall mission,

---

to cover groups of employees whose work is not directly connected with navigation and transportation by water, including dredge-workers." 149 F.3d at 348. Again, context matters.

[8] In her brief, McLaughlin admits to the "occasional handling of lines during docking procedures," a duty which relates more closely to operating the ferry itself. She did not mention that responsibility in her complaint's allegations, and we ignore it for present purposes. That acknowledgment emphasizes, however, the importance of developing the facts of this case carefully.

McLaughlin rendered service as an "aid in" the operation of the vessel as a means of transportation. At one point, Boston Harbor even asserts that "[b]y definition, a deckhand on a commuter boat is providing service in the operation of a vessel as a means of transportation" (emphasis added). But that definition would exclude employees from overtime pay based solely on their place of work, an approach rejected by the Department. See 29 C.F.R. § 783.33 (status as a seaman does not depend on "the place where [the work] is performed").

It is important to note that the Department's rejection of Boston Harbor's position in its motion to dismiss, and its objection to the court's ruling granting that motion, is based on the explicit language of the Department's regulations, not an interpretation of the regulations. In those regulations, the Department states that a court should look to the work actually performed, "not on what it is called or the place where it is performed." 29 C.F.R. § 783.33.[9] We echoed that principle

---

[9] As the Department states in its amicus brief,

the district court's dismissal is tantamount to a finding that deckhands on commuter boats are exempt "water transportation workers" under 13(b)(6) [of the FLSA] as a matter of law. Clearly, the IB [interpretive bulletin] and the case law instruct that what the employee is called, or where the work is performed, is not determinative. Each case must be analyzed independently in accordance with the Secretary's "aid to transportation" test.

However, at the end of its brief, the Department loses its focus on

ourselves in <u>Bay State Dredging</u>.  Boston Harbor's reading of the exemption simply does not comport with the fact-sensitive approach required by the Department's regulations.[10]

## C. Lack of reported cases

Third and finally, Boston Harbor said that it could not find any reported cases in which deckhands on commuter ferries were held to be entitled to overtime under the FLSA.  This argument is

the preliminary stage of this case when it "suggests that the case be remanded for a determination of the facts and for application of the law in accordance with the Secretary's interpretation to those facts."  We are remanding for a determination of the facts. However, the district court will have to decide in the first instance if it is persuaded by the Secretary's interpretation of the regulations applied to those facts.

[10] Boston Harbor makes the claim that the regulations incorporate two cases that excluded from overtime pay "all personnel employed by the owner on board ferries": namely, <u>Walling</u> v. <u>Keansburg Steamboat Co.</u>, 162 F.2d 405 (3d Cir. 1947), and <u>Helena Glendale Ferry Co.</u> v. <u>Walling</u>, 132 F.2d 616 (8th Cir. 1942).  I disagree that either case stands for such a broad proposition. Both are marked by a paucity of information as to the actual duties of employees like McLaughlin.

The ferries in <u>Keansburg Steamboat</u> transported passengers from May to October and stayed moored to the dock the rest of the year. About half the crew would be dismissed for the mooring period, while the other half would stay on to perform repairs.  162 F.2d at 406.  The court held that this second group remained seamen and were thus excluded from overtime pay.  <u>Id.</u> at 407-08.  Although the court also referred in passing to the first group of workers as seamen, they were not the focus of the case.  Thus we do not have a good basis for comparing McLaughlin's alleged duties with theirs.

<u>Helena Glendale</u> is similarly unenlightening for our purposes. That case principally concerned three employees of a ferry company who did not work on ferries at all: one, for example, worked as superintendent of a cotton plantation near the Mississippi River. 132 F.2d at 618-19.  As for the actual ferry-workers employed by the company, the court noted that "[a]pparently" they were seamen, but, as in <u>Keansburg Steamboat</u>, the court did not say anything about the nature of their duties.  <u>Id.</u> at 618.

another reflection of Boston Harbor's unpersuasive categorical approach to this case. Speaking of "deckhands" in general terms is not helpful. More to the point, I could find no cases supporting the broad position of Boston Harbor that any deckhand on a ferry, irrespective of the nature of the deckhand's work, qualifies as a seaman under the FLSA.

**IV.**

Both our precedent and the Labor Department's regulations make clear that neither job titles nor the locus of the work are determinative in this case. The focus must be on the nature of the duties actually performed: whether they are maritime or non-maritime. Importantly, "maritime" in this context does not simply mean "takes place on the water." If so, dredge-workers like the ones in Bay State Dredging would be seamen and thus ineligible for overtime pay. Rather, in the language of the Department's regulation, maritime means "service which is rendered primarily as an aid in the operation of such vessel as a means of transportation." 29 C.F.R. § 783.31.

McLaughlin's service on the ferry may or may not fall within that regulation. Given that uncertainty, McLaughlin should have an opportunity to develop her case factually and thereby explain the precise context of her duties. After all, as we have said, the "line of demarcation between seamen and non-seamen is not distinctly drawn, and probably cannot be. It depends a good deal

-31-

upon the facts in each case, especially upon the character of work that is principally engaged in." Bay State Dredging, 149 F.3d at 351.   Therefore, the district court erred in dismissing McLaughlin's complaint on the basis of Boston Harbor's flawed legal arguments.