# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

November 13, 2014

No. 13-20144

Lyle W. Cayce
Clerk

KEITH COFFIN, on behalf of himself and others similarly situated; ERIC
JONES; JOSE L. RANGEL; JOSH FOX; GREGORY ROBINSON; JASON J.
VILLAREAL; DUSTIN AKINS; MASON FULKERSON; ZACHARY
LATIOLAIS,

Plaintiffs - Appellees

v.

BLESSEY MARINE SERVICES, INCORPORATED,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, HIGGINBOTHAM, and SOUTHWICK, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Blessey Marine Services, Inc. ("Blessey") brings this interlocutory appeal
challenging the district court's denial of its motion for summary judgment. The
district court declined to decide as a matter of law whether nine individual
plaintiffs (collectively the "Plaintiffs"), former vessel-based tankermen on
Blessey barges, who brought suit under the Fair Labor Standards Act ("FLSA")
seeking overtime pay, were exempt from the FLSA as seamen.[1]  Although the

---

[1] The appeal is properly before us because the district court certified its order for
immediate appeal, and we subsequently granted Blessey's petition for leave to appeal. *See*
28 U.S.C. § 1292(b).

No. 13-20144

district court conditionally certified a class action, only eleven individuals joined, and the parties decided to proceed individually.

Blessey produced extensive evidence during discovery suggesting that the Plaintiffs' loading and unloading duties were done as part of the vessel crew and aided the seaworthiness of the vessel, and at the close of discovery it moved for summary judgment. In response, the Plaintiffs largely ignored responding to Blessey's evidence and arguments, and countered that loading and unloading a vessel is nonseaman work as a matter of law, a question that was decided by our opinion in *Owens v. SeaRiver Maritime, Inc.*, 272 F.3d 698 (5th Cir. 2001). The Plaintiffs argued that *Owens* forecloses any factual inquiry into the nature and character of loading and unloading duties. The district court accepted this interpretation of *Owens* and concluded that loading and unloading the vessel was in and of itself, without regard to attachment to a specific vessel as seamen for other purposes, nonseaman work as a matter of law. It set the case for trial so that a jury could determine whether those duties were a substantial amount of the Plaintiffs' overall work.

Our review of the applicable law and record evidence leads us to a contrary conclusion; we believe that the district court misapplied *Owens*. Furthermore, the record establishes that these vessel-based tankermen performed only seaman work, making them exempt from the FLSA's overtime provisions. Accordingly, we VACATE the district court's denial of summary judgment and REMAND the case to the district court for entry of judgment in favor of Blessey.

## I.

We begin with a discussion of the relevant facts, which are largely undisputed. Blessey's business primarily consists of shipping liquid cargo along inland and oceanic waterways. Blessey uses a system of equipment

2

## No. 13-20144

called a unit tow, which consists of a towboat and two tank barges, to ship the liquid. The towboat contains the navigation controls, machinery space, and propulsion, and it pushes the barges through the waterway. Meanwhile, the barges are connected to the towboat through a series of lines and wires. Each Blessey barge consists of several separate tanks that can be used for storing liquid, and loading and unloading such a barge is a complex process.

The unit tow is manned by a crew that lives and works on the towboat for a designated period of time (called a hitch). Typically, crew members work for 20 days on a unit tow followed by 10 days off (called a 2-for-1 day hitch). Each day, a crew member generally works two six-hour shifts. Crew sizes may vary from as few as four to as many as ten people.

The crew consists of a "wheelman," a pilot, tankermen, and deckhands. The "wheelman" is usually a captain or relief captain, and all members of the crew work at his or her direction. A "tankerman" has gained deckhand experience and received required training in the loading and unloading of liquid cargo from a barge. Blessey's tankermen are vessel-based and share the nineteen duties that deckhands perform along with various additional tasks related both to the maintenance of the barges and the loading and unloading process. The parties agree that most of these tasks are seaman work.[2] Relevant here, Blessey requires its tankermen to perform the loading and unloading process for the unit tow. Thus, the tankermen both load and unload

---

[2] Tankermen have nineteen deckhand duties, and the parties agree that all of them are seaman work: (1) cleaning, (2) handling lines, (3) standing watch, (4) making locks, (5) putting out lights, (6) handling running lights, (7) cooking, (8) changing engine filters, (9) radio communications, (10) repairing lines, (11) troubleshooting barge engines, (12) troubleshooting boat engines, (13) painting, (14) changing oil in engines, (15) purchasing supplies, (16) chipping, (17) changing oil in generators, (18) tying off to docks, and (19) building tow. Similarly, the parties agree that three tankerman duties are also seaman work: (1) pumping out bilge water, (2) fueling the vessels, and (3) adding lube oil.

the barges and perform other tasks related to the loading and unloading process.[3]   The Plaintiffs argue that *these* categories of duties are nonseaman work, while acknowledging their many other duties are seaman work.

The Plaintiffs typically worked as seamen aboard a vessel for approximately 84 hours during a seven-day period and were paid a "day rate," or a flat daily sum.  They were not paid overtime for any work, as is customary and lawful with respect to seamen.

## II.

## A.

We review the district court's decision to deny summary judgment de novo and apply the same standards as the district court.  *Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848, 856 (5th Cir. 2014).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  We may consider the record evidence before the district court, but we may not assess credibility or weigh evidence.  *Lawyers Title Ins. Corp.*, 739 F.3d at 856.  The motion for summary judgment in this case is based on the FLSA exemption for seamen, and the "ultimate determination of whether an employee is exempt . . . is properly characterized as a conclusion of law, subject to plenary review."  *Dalheim v. KDFW–TV*, 918 F.2d 1220, 1226 (5th Cir. 1990).

## B.

---

[3] The Plaintiffs identified a number of these related tasks.  Tankermen are responsible for "lubing the barge," which requires: (1) oiling grease-fittings on the barges, (2) changing the oil and oil-filters on the barge engines, (3) cleaning the barges of oil spots and debris, (4) making sure all hatches and dogs are tightly secured, and (5) doing an overall readiness inspection of the barge.  Additionally, the tankermen must (1) check pressure gauges for heated fuel, (2) check outgoing or incoming temperature of heating oil, (3) maintain the generator, (4) drain water from the expansion tank, and (5) fuel the barge.  Tankermen also perform a variety of other tasks related to loading and unloading while the barge is docked.

No. 13-20144

To decide whether the Plaintiffs are exempt seamen, we turn to the relevant statutory and regulatory language setting out obligations with respect to the FLSA. The FLSA generally forbids employing workers for a workweek longer than forty hours "unless such employee receives compensation for his employment . . . at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). An employee is not protected by this broad prohibition, however, if he falls within an exemption from statutory coverage. *Meza v. Intelligent Mexican Mktg., Inc.*, 720 F.3d 577, 580–81 (5th Cir. 2013). Relevant here, the FLSA exempts from overtime "any employee employed as a seaman." 29 U.S.C. § 213(b)(6). Congress did not define "seaman," and it is left to us to interpret the term to resolve this appeal.

For guidance, we turn primarily to the Department of Labor ("DOL") regulations, which we have held to be "entitled to great weight." *Dole v. Petroleum Treaters, Inc.*, 876 F.2d 518, 521 (5th Cir. 1989) (citing *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 297 (1985)). Generally, a vessel's crew members are seamen, so long as they meet the criteria in 29 C.F.R. § 783.31. 29 C.F.R. § 783.32. Section 783.31 outlines these criteria as follows:

> [A]n employee will ordinarily be regarded as "employed as a seaman" if he performs, as master or subject to the authority, direction, and control of the master aboard a vessel, service which is rendered primarily as an aid in the operation of such vessel as a means of transportation, provided he performs no substantial amount of work of a different character.

*Id.* § 783.31. The regulations provide that work other than seaman work becomes substantial "if it occupies more than 20 percent of the time worked by the employee during the workweek." *Id.* § 783.37.

The use of the word "ordinarily" in § 783.31 evinces that the FLSA eschews a fixed meaning of the term seaman. The regulations emphasize

5

flexibility, indicating that the term's "meaning is governed by the context in which it is used and the purpose of the statute in which it is found." *Id.* § 783.29(c). Similarly, we must evaluate an employee's duties based "upon the character of the work he actually performs and not on what it is called or the place where it is performed." *Id.* § 783.33. As we have recognized, the FLSA as a whole is "pervaded by the idea that what each employee actually does determines its application to him." *Walling v. W. D. Haden Co.*, 153 F.2d 196, 199 (5th Cir. 1946). Accordingly, the application of the seaman exemption generally depends on the facts in each case. *See McLaughlin v. Bos. Harbor Cruise Lines, Inc.*, 419 F.3d 47, 51–52 (1st Cir. 2005) (recognizing that application of the seaman exemption is a fact-intensive question that can be answered in many cases only after a trial).

### III.

With this framework guiding us, we will address both categories of duties at issue in this suit, beginning with the loading and unloading duties and concluding with those responsibilities related to loading and unloading.

### A.

### 1.

The district court concluded, and the Plaintiffs urge on appeal, that our decision in *Owens* establishes that loading and unloading a vessel is *always* nonseaman work. We consider this reading of *Owens* to be erroneous.

First, *Owens* involves significantly different facts from this case. The plaintiff in *Owens* only sought overtime pay for his work loading and unloading barges as a member of SeaRiver's land-based Strike Team. Although he had previously worked as a vessel-based tankerman, he did not pursue any overtime for that work. We emphasized that during the relevant time period Owens was *not* a crew member of a tow and *not* tied to a particular vessel for a voyage. 272 F.3d at 700. Similarly, Owens worked "on unattended or 'tramp'

barges that were neither towed by SeaRiver boats nor attended by SeaRiver crews." *Id.* By contrast, the Plaintiffs here *were* members of a unit tow crew, *were* assigned to particular vessels for a voyage, and *were* expected to perform work on barges that were towed by Blessey's boats and crews.

Although the Plaintiffs contend that these factual differences are irrelevant, this contention is inconsistent with our analysis in *Owens*. The Plaintiffs point to several DOL regulations that purportedly suggest that loading and unloading duties are not seaman work. *See* 29 C.F.R. § 783.32 (suggesting that loading and unloading freight is nonseaman work but may not change a seaman's classification if the work is insubstantial); 29 C.F.R. § 783.36 (explaining that barge tenders who primarily or substantially load and unload cargo are not seamen). We acknowledged such language in *Owens*, but we noted with some caution that "[w]orkers who are primarily concerned with loading and unloading cargo are not, *generally speaking*, seamen within the meaning of the FLSA." 272 F.3d at 704 (emphasis added). Our inclusion of the words "generally speaking" is significant because we explicitly acknowledged through this language that we *always* consider the factual context when deciding whether an employee is exempt. While the DOL regulations suggest that in many cases loading and unloading duties are nonseaman work, we recognized that such a rule cannot be categorical in the light of the DOL's crucial qualification that the application of the seaman exemption "depends *upon the character of the work* [an employee] actually performs and not on what it is called or the place where it is performed." 29 C.F.R. § 783.33 (emphasis added).

We also recognized in *Owens* that the character of loading and unloading duties might change when a member of a vessel-based crew performs such duties. In a footnote, we indicated that rigid application of the DOL's twenty percent rule, which it uses to determine whether nonseaman work is

substantial or insubstantial, could create an absurd result where an employee works primarily at sea but is a nonseaman for a brief period when he loads or unloads at port. 272 F.3d at 702 n.5. This footnote further underscores the limits of our decision in *Owens*, as we left open the question of loading and unloading duties for vessel-based employees.

Finally, the Plaintiffs contend that we rejected in *Owens* the type of evidence that Blessey relies upon today, to wit, evidence connecting loading and unloading duties to the navigational integrity of the unit tow. SeaRiver argued, as Blessey argues now, that improper loading or unloading of a barge could render it unsafe or cause it to break apart. We concluded that the duties in that case only prepared the vessel for navigation but did not actually aid its operation. *Id.* at 704. Our primary concern, though, was that accepting such evidence as *dispositive* would expand the definition of seaman to encompass many land-based personnel. Again in a footnote, we expounded that "[f]or example, a *land-based worker* who installs navigation equipment on vessels would be a seaman, as would a worker *at a refueling dock.*" *Id.* at 704 n.6 (emphasis added). Although the evidence in *Owens* was insufficient to suggest that loading and unloading assisted the vessel's operation, we did not categorically reject the relevance of such evidence in other cases, particularly when the work in question is performed by a member of the vessel's crew.

We conclude that the district court erred when it determined that *Owens* required it to hold that loading and unloading duties performed by vessel-based tankermen were nonseaman duties as a matter of law.

2.

Instead, our review of the relevant law and undisputed facts leads us to the conclusion that loading and unloading was seaman work when done by these vessel-based Plaintiffs. We turn first to § 783.31, which provides that an employee is a seaman if two criteria are met: (1) the employee is "subject to the

authority, direction, and control of the master;" and (2) the employee's service is primarily offered to aid the "vessel as a means of transportation," provided that the employee does not perform a substantial amount of different work. 29 C.F.R. § 783.31. Both parties agree that the Plaintiffs were subject to the master's control. As to the second prong, the Seventh Circuit persuasively notes that this provision "just means that the employee must be a (more or less) full-time member of the marine crew, that is, the crew that is responsible for operating the ship." *Harkins v. Riverboat Servs., Inc.*, 385 F.3d 1099, 1104 (7th Cir. 2004). This reading is consistent with our own precedent in which we attempt to give the term seaman "its ordinary meaning." *Dole*, 876 F.2d at 523.

We have early-on recognized that vessel-based barge tenders who maintain and service a barge are exempt seamen under the FLSA. *Gale v. Union Bag & Paper Corp.*, 116 F.2d 27, 29 (5th Cir. 1940). In *Gale*, the plaintiffs slept on the barges and attended the lines, put out running and mooring lines, pumped out bilge water, and performed other tasks. We concluded that they were exempt seamen and reasoned that "[t]hey were necessary for the operation, welfare and safety of the barges" and that they performed many duties "necessary and usual to the navigation of the barges." *Id.* at 28. We recognized, for example, "[i]f the tow line had parted at any time on a voyage the barge would have been helpless and might have become a total loss if the barge tender was not there to drop the anchor and otherwise look out for its safety." *Id.* In *Owens*, we cited to *Gale* and emphasized that the workers in *Gale* "worked, ate, and slept on board their assigned barges." 272 F.3d at 701.

In our view, the reasoning of *Gale* controls this case. It is undisputed that the Plaintiffs ate, slept, lived, and worked aboard Blessey's towboats. They were members of the crew and worked at the direction of the captain. As

to the loading and unloading duties, the district court recognized that the "Plaintiffs do not contest [Blessey's] argument that improper loading and unloading can compromise the seaworthiness of the barge." *Coffin v. Blessey Marine Servs., Inc.*, No. 4:11–214, 2013 WL 244918, at *3 (S.D. Tex. Jan. 22, 2013). Martin Creel, a Blessey captain, and James Clendenon, a Blessey executive, both submitted declarations evincing that proper loading and unloading is essential to the efficient, safe movement of the unit tow. The Plaintiffs also testified that safe loading and unloading contributed to the efficient movement of the barge.

We note that *Gale* applied to barge tenders, and the DOL has also promulgated a regulation regarding such employees and categorized them as exempt seamen in many cases. That regulation also provides, however:

> [T]here are employees who, while employed on vessels such as barges and lighters, are primarily or substantially engaged in performing duties such as loading and unloading or custodial service which do not constitute service performed primarily as an aid in the operation of these vessels as a means of transportation and consequently are not employed as "seamen."

29 C.F.R. § 783.36. Although the Plaintiffs urge us to interpret this statement to preclude any finding that loading or unloading duties are seaman work, we do not interpret the regulation so narrowly. As we noted above, we already rejected such a categorical rule in *Owens*. *See* 272 F.3d at 704 (emphasizing that workers who primarily load and unload barges are *generally speaking* not seamen under the FLSA). Moreover, this statement appears merely to recognize the presumption that loading and unloading duties are nonseaman work because those duties are usually performed by harbor-based personnel who have little to no role in the barge's navigational mission. *See McCarthy v. Wright & Cobb Lighterage Co.*, 163 F.2d 92 (2d Cir. 1947) (concluding that a shore-based bargee was not a seaman because his maritime duties consumed

only a few minutes of his day and he primarily supervised and facilitated the loading or unloading of cargo); *see also Anderson v. Manhattan Lighterage Corp.*, 148 F.2d 971 (2d Cir. 1945) (determining that workers were not seamen when they transferred cargo in New York Harbor and were rarely on board the vessel during the tow).

By contrast, in this case vessel-based tankermen performed the loading and unloading duties as members of a unit tow's crew. The Plaintiffs' presence aboard the vessels naturally affected the nature of their loading and unloading duties.[4] Critically, the context in which work is done can affect whether it is seaman or nonseaman work. *See Martin v. Bedell*, 955 F.2d 1029, 1035 (5th Cir. 1992). In *Martin*, the Secretary of Labor brought suit to compel a company to pay overtime to cooks who worked aboard boats that provided offshore maintenance to oil companies. We recognized that a vessel-based "cook is *usually* a seaman because he usually cooks *for* seamen." 955 F.2d at 1036. We remanded that case for further factual findings, however, so that the district court could determine whether the cooks spent a significant amount of time preparing food for nonseamen. *Id.* Our distinction underscores the important point that food preparation is neither inherently seaman nor nonseaman work, and its character depends on the context in which it is performed.

In *Martin*, we were aided by a DOL regulation providing that "[t]he term 'seaman' includes members of the crew such as . . . cooks . . . if, as is the usual

---

[4] Of course, we recognize that an employee is not a seaman merely because he works on a boat. *See* 29 C.F.R. § 783.33. Indeed, we have recognized that employees on a dredge boat may aid in the operation of the vessel while still performing primarily nonseaman duties. *Walling v. W. D. Haden Co.*, 153 F.2d 196, 199 (5th Cir. 1946). Our decision in *W. D. Haden* is readily distinguishable from this case, however, because we concluded there that the workers on the dredge boat were employed primarily in industry because they harvested shells from the ocean. Here, the Plaintiffs worked on a vessel that shipped cargo on inland and oceanic waterways. Their work on the water was fundamentally seaman work, and their presence on the water was not incidental to the primary purpose of their employment.

case, their service is of the type described in § 783.31." 29 C.F.R. § 783.32. The presumption that members of the crew are seamen is not limited to cooks, as the regulation includes the broad terms "includes" and "such as" to indicate that the enumerated positions are exemplary, not exclusive. *See Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2170 (2012) (explaining in the context of another FLSA regulation that use of the verb "includes" indicates "that the examples enumerated in the text are intended to be illustrative, not exhaustive"). As with § 783.36, this provision indicates that a crew member does not lose his status "simply because, as an incident to such employment, he performs some work not connected with operation of the vessel as a means of transportation, such as assisting in the loading or unloading of freight at the beginning or end of a voyage." 29 C.F.R. § 783.32. Again, the Plaintiffs urge us to decide that this statement means that loading and unloading duties are never seaman work.

It appears to us that this statement only means that in some, perhaps in many, situations and circumstances involving loading and unloading duties, the work is nonseaman. Blessey's evidence demonstrates that the loading or unloading of its liquid cargo requires precision so that the barge can operate safely. Naturally, when an individual lives aboard the vessel that he or she loads or unloads, this living situation will affect the character of his or her duties. In *Owens*, the tankerman duties were divorced from the subsequent navigation of the barge. *See* 272 F.3d at 704 (noting that the plaintiff did not move or moor the barge and only prepared it for navigation). By contrast, the Plaintiffs here recognized that their loading and unloading duties were integrated with their many other duties. Indeed, the plaintiff in *Owens* chose not to sue for the time he was a tankerman in navigation. *Id.* at 700. For example here, Plaintiff Joshua Fox testified that he would regularly walk his barge to make certain that the barge was level because doing his job improperly

could mean that the barge would get stuck when traveling down a river or canal. Eric Jones and Zachary Latiolais, two other Plaintiffs, testified that performing their loading and unloading duties effectively made their jobs and the captain's job easier. Thus, the Plaintiffs are instead seamen because, like a cook, they are a member of the crew and perform work that meets the definition of § 783.31.

We conclude that Blessey's tankermen *are* seamen while loading and unloading the vessel because these duties were integrated within their many other duties. Inquiries into FLSA exempt status "remain[] intensely factbound and case specific," and we have cautioned that "[e]ach case must be judged on its own peculiar facts." *Dalheim*, 918 F.2d at 1226–27. The DOL applies this principle to the seaman exemption, emphasizing that the exemption's application "depends upon the character of the work." 29 C.F.R. § 783.33. Blessey has produced undisputed evidence evincing that these vessel-based tankermen performed their loading and unloading duties with an eye toward navigation *and* were required to perform such duties safely so that the vessel could safely operate on inland and oceanic waterways. We see no basis for distinguishing their loading and unloading duties from the many other duties the vessel-based barge tenders performed in *Gale*.[5] *See Jordan v. Am. Oil Co.*, 51 F. Supp. 77, 78–79 (D.R.I. 1943) (applying the seaman exemption to vessel-based tankermen based on our decision in *Gale*).

---

[5] The Plaintiffs contend that cases like *Gale* and *Jordan* are inapposite because they were decided before the DOL adopted the twenty percent rule used to determine whether nonseaman duties are substantial. This argument is unavailing for two reasons. First, we continue to recognize *Gale* in cases concerning the seaman exemption. *See Owens*, 272 F.3d at 701. Second, we cautioned in *Owens* against the rigid application of the twenty percent rule. *Id.* at 702 n.5. It appears to us that a careful evaluation of the nature and character of the work in question assuages our concerns in *Owens*.

Finally, we consider that the policies of the FLSA support our decision today.  The FLSA's exemptions were designed to apply to

> a kind of work that was difficult to standardize to any time frame and could not be easily spread to other workers after 40 hours in a week, making compliance with the overtime provisions difficult and generally precluding the potential job expansion intended by the FLSA's time-and-a-half overtime premium.

*Christopher*, 132 S. Ct. at 2173 (internal quotation marks omitted).  As the American Waterways Operators explained in its amicus brief, generally speaking, tankermen devote varying amounts of time to loading and unloading on each hitch.  On some hitches, workers may spend as little as ten percent of their time loading and unloading, while others may spend fifty percent or more.  Thus, a tankerman could be a seaman on some hitches and not on others, making it disruptive and disputatious on the vessel.  *See Owens*, 272 F.3d at 702 n.5.  Similarly, Blessey's tankermen work aboard a vessel with limited space for other workers, making the unit tow an environment where "working more than 40 hours a week is an appropriate work norm."  *Harkins*, 385 F.3d at 1102.  Thus, the policy objectives of the FLSA support this decision.

For these reasons, we conclude that loading and unloading duties are seaman work when performed by these vessel-based tankermen.


B.

We briefly note that the Plaintiffs also argued a number of tasks related to their loading and unloading duties were also nonseaman work for FLSA purposes.  They explain in their brief that the district court did not address these categories of work and urge that the work is not part of this appeal.  This work *is* part of this appeal, though, both because Blessey has briefed the issue and because we may affirm the district court for any reason supported by the

record, even if the district court did not rely on that reason. *United States v. Gonzalez*, 592 F.3d 675, 681 (5th Cir. 2009).

This argument gives us little pause, though, as the activities related to loading and unloading were also clearly seaman work. As Blessey notes, many of these readiness duties are part of the basic maintenance of a barge. The basic maintenance of a vessel is almost always seaman work for FLSA purposes. *See Louviere v. Standard Dredging Corp.*, 239 F.2d 164, 164–65 (5th Cir. 1956) (recognizing that a deckhand's routine maintenance work on a tug constituted seaman duties for FLSA purposes). As we discussed in detail above, the loading and unloading process is connected with the Plaintiffs' many seaman duties as members of the crew.

Additionally, our interpretation of the FLSA regulations above would also control this issue in this appeal. We have held that the loading and unloading is *itself* seaman work for FLSA purposes, and by extension the work related to loading and unloading is also seaman work under the FLSA.

IV.

In sum, we have focused on the totality of the facts presented in this appeal, and we have held that loading and unloading duties along with any related duties constitute seaman work when performed by vessel-based tankermen. Consequently, the district court erred when it denied Blessey's motion for summary judgment on this issue. The tankermen performed duties crucial to the mission and purpose for the unit tow and were at all times engaged in work regarding the safe and efficient operation of a "vessel as a means of transportation" under § 783.31. This holding is in harmony with our precedent, the relevant DOL regulations, and the spirit and purpose of the FLSA.

VACATED, and REMANDED,
for entry of judgment in favor of Blessey.