# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-30558

United States Court of Appeals
Fifth Circuit

**FILED**

April 19, 2017

Lyle W. Cayce
Clerk

KYLE HALLE, Individually and On Behalf of Others Similarly Situated,

Plaintiff–Appellant,

v.

GALLIANO MARINE SERVICE, L.L.C.; C-INNOVATION, L.L.C.,

Defendants–Appellees.

Appeal from the United States District Court
for the Eastern District of Louisiana

Before PRADO, HIGGINSON, and COSTA, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

Plaintiff–Appellant Kyle Halle sued Galliano Marine Service, LLC[1] and C-Innovation, LLC (collectively, "the Defendants") under the Fair Labor Standards Act ("the FLSA" or "the Act") to recover unpaid wages for overtime worked during his employment at C-Innovation. The district court granted summary judgment against Halle because it concluded that Halle qualified as a "seaman" under the FLSA and was thus exempt from the Act's overtime

---

[1] Galliano Marine Service is the company responsible for Halle's payroll checks, W-2s, and other payroll documents.

No. 16-30558

provisions. Halle appealed. We REVERSE and REMAND this case for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On October 30, 2015, Kyle Halle sued the Defendants under the FLSA for unpaid overtime.[2] The Defendants in this case run a remotely operated vehicle ("ROV") business for offshore applications and employed Halle from May 12, 2009, to October 12, 2015, as an ROV Technician and ROV Supervisor.

ROVs are unoccupied mechanical devices used, among other things, to fix, service, and repair offshore, underwater drilling rigs. They are generally used to perform tasks that otherwise could not be performed by human divers because of depth or water conditions. Technicians like Halle navigate and control ROVs aboard an ROV Support Vessel, to which the ROVs remain tethered while in use. ROV Support Vessels serve as "a means of transporting their attached ROVs over water" and are specially outfitted for this purpose. The ROV's "handling system, wench, A-frame, hydraulic power unit[,] vans, and control system" are all welded to the support vessel.

The technicians who steer the ROVs work inside a windowless shipping container converted into an ROV command center located on the support vessel. From there, the ROV Technicians steer and control the ROVs using a video feed and joysticks. Although the ROV command center is located on the support vessel, technicians are not mixed with the support vessel's crew, cannot see whether any navigational issues are affecting the support vessel, and, according to Halle, are considered by the crew to be "passengers" or "third parties." According to Halle, ROV Technicians are subject to a chain of command separate and apart from that of the support vessel. Halle in

---

[2] Halle sued on behalf of himself and others who are similarly situated.

2

No. 16-30558

particular always reported to C-Innovation's Operations Coordinator and Operations Manager, both of whom are land-based.

Halle's particular duties were dedicated only to ROVs. According to Halle, he took no part in upkeep of the support vessel—he never performed maintenance work like sanding, painting, or chipping the ROV Support Vessel. Rather, the only maintenance work he performed was to the ROVs themselves. Halle also never steered the support vessel but, in his role as ROV Supervisor, did occasionally relay GPS coordinates from C-Innovation's customers to the support vessel captain either by radio or by pointing to a location on a chart. This process apparently never took more than a few seconds. Despite his knowledge of the support vessel's final destination, Halle had "nothing to do with determining the ROV Support Vessel's path to the intended target, steering, anchoring, making any navigational decisions[,] or taking any navigational actions."

Halle sued the Defendants on October 30, 2015, for failing to pay him for overtime as purportedly required by the FLSA. The Defendants moved for summary judgment on January 25, 2016, arguing that Halle was exempt from the FLSA's overtime provisions because he qualifies as a "seaman" under the Act. On February 25, 2016, the district court granted the Defendants' motion and dismissed Halle's claim with prejudice. Thereafter, Halle filed a motion for reconsideration, which was denied on April 18, 2016. Halle now appeals.

## II. DISCUSSION

"We review a grant of summary judgment de novo, applying the same standard that the district court applied." *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016). Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing

No. 16-30558

a motion for summary judgment, factual inferences are viewed in the light most favorable to the nonmoving party. *Smith*, 827 F.3d at 417.

The FLSA requires employers to provide overtime pay to any employee who works more than forty hours per week unless an exemption from this protection applies. 29 U.S.C. §§ 207, 213; *Coffin v. Blessey Marine Servs., Inc.*, 771 F.3d 276, 279 (5th Cir. 2014). It is the "employer [who] bears the burden to establish a claimed exemption." *Songer v. Dillon Res., Inc.*, 618 F.3d 467, 471 (5th Cir. 2010). This case involves the "seaman" exemption to the FLSA's overtime provision, 29 U.S.C. § 213(b)(6), and presents an issue of first impression: whether ROV Technicians are seamen under the FLSA.

An employee is a seaman when the following criteria are met: "(1) the employee is subject to the authority, direction, and control of the master; and (2) the employee's service is primarily offered to aid the vessel as a means of transportation, provided that the employee does not perform a substantial amount of different work." *Coffin*, 771 F.3d at 281 (citing 29 C.F.R. § 783.31). Per Department of Labor ("DOL") regulations,[3] "work other than seaman work becomes substantial if it occupies more than 20 percent of the time worked by the employee during the workweek."[4] *Id.* at 279–80 (citing 29 C.F.R. § 783.37). This Court must "evaluate an employee's duties based upon the character of the work he actually performs and not on what it is called or the place where it is performed." *Id.* at 280 (citing 29 C.F.R. § 783.33). Because "what each employee actually does" determines how the FLSA applies to him, "application of the seaman exemption generally depends on the facts in each case." *Id.*

---

[3] Although not binding, this Court has stated repeatedly that these regulations are "entitled to great weight." *Coffin*, 771 F.3d at 279; *accord Dole v. Petroleum Treaters, Inc.*, 876 F.2d 518, 521 (5th Cir. 1989).

[4] As this Court has recognized, however, strict application of the twenty percent rule is not necessary. *Coffin*, 771 F.3d at 284 n.5.

4

No. 16-30558

## A.    The FLSA and Jones Act

We first reiterate a concept long-recognized by this Court: the definition of "seaman" in the Jones Act[5] is not equivalent to that in the FLSA. *Petroleum Treaters*, 876 at 520. The two acts are "separate and independent of each other." *Id.* While the Jones Act interprets seaman "broadly to maximize the scope of the remedial coverage," the exemptions under the FLSA "have been drawn narrowly . . . to minimize the number of employees who lose the Act's protections." *Id.* at 522–23. *Compare Barrett v. Chevron, U.S.A., Inc.*, 781 F.2d 1067, 1070 (5th Cir. 1986) (describing the "expansive interpretation" given to the word "seaman" in the Jones Act), *with Brennan v. Greene's Propane Gas Serv., Inc.*, 479 F.2d 1027, 1032 (5th Cir. 1973) (noting how exemptions to the FLSA are construed narrowly against the employer). Given these differences, it is error for a court to resolve an FLSA case by resorting to legal standards, such as the definition of a "seaman" or an "appurtenance," from Jones Act caselaw.

## B.    Application

As explained above, the test for whether someone is employed as a seaman involves two prongs. *See Coffin*, 771 F.3d at 281.  The first prong asks whether the employee performs as "master or subject to the authority, direction, and control of the master aboard a vessel." 29 C.F.R. § 783.31. Here, the district court seemingly equated the ROVs with "vessels" and concluded that Halle's "direct[ion]" and "command" of the ROVs satisfied this element. But there is no evidence to suggest that the ROVs are vessels. The only "vessel" in this case is the ROV Support Vessel. And according to Halle's sworn declaration, he was not subject to the support vessel's chain of command and

---

[5] The Jones Act is a maritime statute that "provides a cause of action in negligence for 'any seaman' injured 'in the course of his employment.'" *Chandris, Inc. v. Latsis*, 515 U.S. 347, 354 (1995) (quoting 46 U.S.C. § 30104).

did not report to the support vessel's captain. Contrarily, another employee submitted an affidavit attesting that Halle did report to the captain. This competing testimonial evidence precludes summary judgment as to prong one.

The second prong asks whether the "employee's service is primarily offered to aid the vessel as a means of transportation." *Coffin*, 771 F.3d at 281 (citing 29 C.F.R. § 783.31). Because we find it dispositive in this case, the second prong will be the focus of our analysis. This inquiry concentrates on the duties of an employee. *See* 29 C.F.R. § 783.31; *Coffin*, 771 F.3d at 280. In accordance with DOL regulations, this Court focuses on whether the employee's duties "primarily . . . aid in the operation of [the] vessel as a means of transportation." 29 C.F.R. § 783.31. We have intimated that the critical issue in analyzing this prong is determining whether the "primary purpose" of the particular individual's work is safe navigation of the ship. *Compare Owens v. SeaRiver Mar., Inc.*, 272 F.3d 698, 703–04 (5th Cir. 2001) (concluding that when the primary purpose of a tankerman's job is "get[ting] cargo on or off the barge," he is not a seaman), *with Coffin*, 771 F.3d at 283–84 (finding that vessel-based tankermen responsible for constant monitoring of barges to ensure safe navigation were seamen).

This Court's decision in *Walling v. W. D. Haden Co.*, 153 F.2d 196 (5th Cir. 1946), is particularly instructive. In *W. D. Haden*, employees engaged in dredging shell deposits were stationed on a dredge boat for months at a time. *Id.* at 197. In order to harvest shells from the ocean floor, dredgemen operated machinery attached to the dredge boat that would "cut[] up the shell deposit from the reef[,] suck[] it up[,] and deliver[] it upon a barge tied alongside the dredge." *Id.* Other than the actual labor of dredging, dredgemen also stood watch and managed anchor cables and barge lines while on duty. *Id.* at 199. Even though the Court recognized the dredgemen were involved in some work of the "nautical kind," it found that the "dominant employment [was] clearly

the industrial one, the production of shells." *Id.* In reaching its conclusion that the dredgemen were not seamen under the FLSA, this Court characterized the maritime work done by these employees as "incidental and occasional" because it took up only a "small fraction of the work time." *Id.*; *see also McKie v. Diamond Marine Co.*, 104 F. Supp. 275, 276–77 (S.D. Tex. 1952).

Halle's work here is similar to that of the dredgemen in *W. D. Haden*. Like the dredgemen, who lived on the dredge boat and operated machinery attached to the boat to do industrial work, Halle lives on the ROV Support Vessel and operates the attached ROVs in the water to complete industrial tasks. Although Halle occasionally communicates GPS coordinates to the captain of the support vessel, he does not otherwise help ensure that the support vessel navigates safely or even in any particular manner from point A to point B. ROV Technicians do not control the "path to the intended target, steer[], anchor[], mak[e] any navigational decisions or tak[e] any navigational actions." In fact, they apparently cannot even "see if there [are] navigational issues affecting the ROV Support Vessel."

The Defendants argue that because the ROVs are attached to the ROV Support Vessel, any navigation, maintenance, service, and repair of those vehicles is essentially done to the vessel itself. But no case law affirmatively supports this position. If anything, *W. D. Haden* seems to contradict this argument. Like the dredge machinery in *W. D. Haden*, which was located on the dredge boat, the ROVs are located on the support vessel. Although certain components of the ROV system are structurally welded to the vessel, the ROVs themselves appear to only be connected temporarily by tethers. This seems analogous to dredging operations where a dredge boat, which carries the dredging machinery, is towed by a tug or vessel. *See W. D. Haden*, 153 F.2d at 197; *McKie*, 104 F. Supp. at 276. Thus, because this Court has not done so in comparable situations, we decline to now equate maintenance, repair, or

navigation of superficially attached machinery (here, the ROVs) with maintenance, repair, or navigation of the support vessel. *Cf. Marshall v. Woods Hole Oceanographic Inst.*, 458 F. Supp. 709, 711, 716, 719 (D. Mass. 1978) (holding that scientific crew members engaged in oceanographic research aboard a vessel—whose mission was scientific and which was specially designed and outfitted with equipment to support that mission—were not employed as seamen because they did not perform duties relevant to maintenance and navigation of the ship itself).

In its order denying Halle's request for reconsideration, the district court relied primarily on *Coffin* to reaffirm its conclusion that Halle is a seaman. In *Coffin*, tankermen were responsible for both loading and unloading barges while the tug boat was docked as well as performing other barge duties while the vessel was in motion. 771 F.3d at 278 & n.3. Although this Court had previously concluded in *Owens* that loading and unloading barges was generally not seaman work, it noted that the duties of the vessel-based tankermen in *Coffin* were distinct. *Id.* at 280–82. Unlike the tankermen in the earlier *Owens* case, the tankermen in *Coffin* spent a significant portion of their time on the vessel performing loading and unloading duties during transit— i.e., inspecting and maintaining the barges to make "the captain's job [of navigating the ship] easier." *Id.* at 283–84. We concluded that because the tankermen spent such a substantial portion of their time performing these duties aboard the ship to ensure the ship's safe navigation, the tankermen were seamen under the FLSA. *Id.* at 284–85.

But the facts in this case are acutely distinct from those in *Coffin*. It is true that both the tankermen in *Coffin* and the ROV Technicians in this case live and work on a vessel. But the similarities end there. While the tankermen in *Coffin* were members of the ship's crew and answered to the captain, the ROV Technicians here have a completely separate command structure. Unlike

the tankermen in *Coffin*, who spent a significant portion of their work time performing tasks that helped the captain safely navigate the ship and attached barges, the ROV Technicians do not assist with nearly any part of navigation. The only role the ROV Technicians seem to have in navigation is the occasional communication of coordinates to the captain of the support vessel.

While giving coordinates alone can perhaps be characterized as contributing to navigation, the question this Court must then answer is what proportion of Halle's time is spent on that seaman's work. *See Coffin*, 771 F.3d at 279–80 (recognizing that an employee is not a seaman if his nonseaman's work becomes substantial—i.e., it occupies more than approximately 20% of the employee's time). Based on the description of Halle's work responsibilities, it seems that transmitting the coordinates, and even the entire process of calculating those coordinates, does not take up a demonstrable majority of his work time. ROV Technicians control ROVs remotely to provide "emergency backup for underwater drilling operations[,] . . . turn subsea valves, disconnect and realign underwater lines, inspect underwater structures, and place marking beacons on the sea floor." They are also responsible for maintaining and servicing the ROVs themselves. Even assuming that it takes an ROV Technician several hours every few days to calculate coordinates[6] and then a few additional minutes to communicate that information to the captain of the support vessel, this does not clearly account for 80% of the estimated eighty-four plus hours worked weekly by ROV Technicians. Accordingly, the district court erred in granting the Defendant's motion for summary judgment as it has not been established as a matter of law that the seaman exemption applies.

---

[6] To be clear, nothing in the record suggests that Halle was actually responsible for calculating the GPS coordinates for the ROV Support Vessel's next destination; rather, it seems that he simply passed along the coordinates from C-Innovation to the support vessel captain.

No. 16-30558

## III. CONCLUSION

For the foregoing reasons, we REVERSE the district court's summary judgment and REMAND this case for further proceedings.