# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
March 3, 2025

Lyle W. Cayce
Clerk

No. 23-40520

_____

Annette Rodriguez,

*Plaintiff—Appellant*,

*versus*

City of Corpus Christi,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:21-CV-297

_____

Before Southwick, Haynes, and Douglas, *Circuit Judges*.

Leslie H. Southwick, *Circuit Judge*:

Plaintiff Annette Rodriguez sued her former employer, the City of Corpus Christi, asserting claims under the Equal Pay Act, Fair Labor Standards Act, Title VII, and 42 U.S.C. § 1983. The district court dismissed Rodriguez's Section 1983 claim on the pleadings and rejected her remaining claims at summary judgment. We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

Annette Rodriguez served as the Director of the City of Corpus Christi and Nueces County Public Health District ("District") "at the

pleasure of the City Manager . . . [and] the Nueces County Judge." The City paid 60% of Rodriguez's salary and the County paid the rest.

Rodriguez's pay and performance history are relevant to this employment dispute. In November 2019, the City announced its intention to bring the District's executive pay group "to an average of 85%" of the market rate. Rodriguez and her assistant director Dante Gonzalez fell within that group, and the City increased their salaries to 90% of the market rate. Rodriguez's salary increased from $127,986.09 to $165,000; Gonzalez's salary increased from $105.231.94 to $123,231.94. Rodriguez did not believe the pay increase reflected her 20 years of experience, but City Manager Peter Zanoni informed her the pay increases were "based on position[]" and "not on tenure."

The following year, the District implemented "a 24 hours a day, 7 days a week[] work schedule" in response to the COVID-19 pandemic. This required the District's City employees — including employees labeled "exempt" from overtime-pay requirements — to work more than 40 hours each week. Rodriguez sent the District an overtime memorandum requesting the approval of overtime pay "for exempt employees," including herself. The District signed the overtime memorandum and approved Rodriguez's request. After a few months, though, the City stopped paying Rodriguez overtime because Mayor Paulette Guajardo said it was not "in the City's best interest." County Judge Barbara Canales wanted Rodriguez to receive overtime at least for "the 40% County portion" of her salary, so Rodriguez continued to submit her completed overtime.

As to Rodriguez's performance history, the Assistant City Manager notified Zanoni in 2020 that Rodriguez had violated several City policies: (1) personal use of City resources; (2) improper records of time and

attendance; (3) irregular work hours; (4) delayed response to emergencies; and (5) unprofessional behavior.

The following year, the City's Human Resource ("HR") Department investigated allegations that Rodriguez created a hostile work environment. The HR Department interviewed six employees who all agreed that Rodriguez could "be quite unprofessional and intimidating" and that "[h]er snide remarks and poor leadership result[ed] in an unpleasant work environment." The employees noted that Rodriguez had a history of retaliatory conduct and was rarely in the office. Some employees suspected Rodriguez of falsifying her overtime hours and making fraudulent purchases on the District's card. The HR Department's report concluded that, "[a]lthough there is an appearance of a pattern of unprofessional conduct and communication in the workplace and suspicious recording of excessive overtime, the allegations could not be confirmed." Still, the investigator found the employees feared for their jobs and believed they worked in a hostile work environment, which did "in fact . . . negatively impact their work environment."

Shortly after the investigation, the Assistant City Manager placed a disciplinary memorandum in Rodriguez's personnel file. The events behind the memorandum were that the City had told Rodriguez it would not implement a mask mandate for Nueces County public schools, but Rodriguez nevertheless "supported the issuance of a mask mandate . . . at a press conference." In the Assistant City Manager's view, this constituted a failure to communicate and coordinate with City leadership. County Judge Canales added her own memorandum two days later, detailing Rodriguez's "[e]xcellent [c]ommunication and [c]oordination with City and County [l]eadership." The evidence indicates that County Judge Canales supported the mask mandate.

3

Then, in a 2021 performance evaluation, the City gave Rodriguez an overall rating of "3" which, though meaning "meets expectations," was a low rating. The City explained that Rodriguez's "[a]ttendance and availability continues to be an issue," and "[n]umerous employees have complained that [Rodriguez] does not report to work daily and often works minimal hours when she is there." Other comments showed Rodriguez does not "communicate effectively with leadership [even] though she has been counselled . . . many times," "does not engage staff in a professional manner," and "has created a hostile work environment for several employees which . . . [was] investigated and found to be true." The County's 2021 Performance Evaluation, however, gave Rodriguez an overall rating of "4" which stood for "exceeds expectations." The City and County averaged their scores together and rounded Rodriguez's overall evaluation score up to "4."

After repeated disagreements, Nueces County agreed to give the City operational control of the District beginning March 1, 2022. Nueces County specifically granted the City sole authority to hire and fire District employees, including the Director. The county attorney, county clerk, and four county commissioners signed the agreement, but County Judge Canales did not. The day the agreement became effective, City Manager Zanoni terminated Rodriguez. He then hired Dr. Fauzia Khan as the new Director.

Rodriguez sued the City in the United States District Court for the Southern District of Texas. She brought a claim under 42 U.S.C. § 1983, alleging the City had, without due process, deprived her of a property right in her continued employment. She also claimed the City withheld her overtime wages and retaliated against her in violation of the Fair Labor

No. 23-40520

Standards Act ("FLSA"), and discriminated and retaliated against her in violation of the Equal Pay Act ("EPA") and Title VII.[1]

The district court dismissed the Section 1983 claim on the pleadings because Rodriguez did not allege a constitutionally protected interest in continued employment. It explained that Rodriguez did not overcome the presumption of at-will employment under Texas law. Both parties moved for summary judgment on the remaining claims. Rodriguez moved to strike the declarations of City Manager Zanoni, Assistant City Manager Steven Viera, and City employee Odette Cruz.

Accepting a magistrate judge's recommendation, the district court granted summary judgment to the City because Rodriguez (1) was exempt from the FLSA overtime pay requirements, (2) did not participate in a protected activity for purposes of an FLSA retaliation claim, (3) did not establish the equal-work or equal-pay prongs of her EPA discrimination claim, (4) did not identify a proper comparator to establish discrimination under Title VII, and (5) did not establish mere pretext on her EPA or Title VII retaliation claims. The district court denied as moot the motions to strike Zanoni's and Cruz's declarations because neither were used in deciding summary judgment. Finally, the district court denied the motion to strike Viera's declaration under the sham affidavit doctrine because his declaration was not contradictory or entirely new when compared to his prior testimony. Rodriguez timely appealed.

---

[1] Rodriguez also brought claims under the Americans with Disabilities Act and the Age Discrimination in Employment Act. The district court dismissed those claims at summary judgment. Rodriguez abandoned those claims because she does not address either on appeal. *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994).

## DISCUSSION

"We 'review a district court's exclusion or admission of evidence' — including application of the sham-affidavit doctrine — 'for an abuse of discretion,' subject to harmless-error review." *Seigler v. Wal-Mart Stores Tex., L.L.C.*, 30 F.4th 472, 476 (5th Cir. 2022) (quoting *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1329 (5th Cir. 1996)). Even if an abuse of discretion occurred, "this court will not reverse unless the error affected the substantial rights of the parties." *Id.* (quoting *Winzer v. Kaufman County*, 916 F.3d 464, 473 (5th Cir. 2019)).

We review the grant of summary judgment *de novo*, applying the same standards as the district court. *Owsley v. San Antonio Indep. Sch. Dist.*, 187 F.3d 521, 523 (5th Cir. 1999). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We view evidence and factual inferences "in the light most favorable to the nonmoving party." *Halle v. Galliano Marine Serv., L.L.C.*, 855 F.3d 290, 293 (5th Cir. 2017).

Rodriguez makes several arguments on appeal: (1) municipal liability under Section 1983 exists because her "termination derived from [a] decision officially adopted and promulgated by the City"; (2) Assistant City Manager Viera's declaration was a "sham affidavit"; (3) she had a property interest in her continued employment; (4) she engaged in protected activity under the FLSA; (5) Assistant Public Health Director Gonzalez was a proper comparator under Title VII and the EPA; (6) the district court did not give adequate consideration to Judge Canales's affidavit; (7) the City's reason for terminating Rodriguez was a mere pretext for retaliation; and (8) Rodriguez was entitled to overtime pay on an hourly basis.

We begin with Rodriguez's first and third arguments.

No. 23-40520

I.    *Section 1983 Claim Against the City*

The one claim dismissed by the district court on the pleadings and not on summary judgment was against the City for an official policy that led to Rodriguez's termination.  Rodriguez does not identify an error in the district court's analysis.  An appellant's failure to identify an error in the district court's analysis is the same as if she had not appealed the judgment on that issue. *Brinkmann v. Dallas Cnty. Deputy Sheriff Abner*, 813 F.2d 744, 748 (5th Cir. 1987).  Rodriguez has therefore abandoned any challenge to the district court's analysis on this issue.

A similar defect exists with her third argument.  The district court dismissed Rodriguez's Section 1983 claim under Federal Rule of Civil Procedure 12(b)(6).  It held that Rodriguez had not pled enough facts to overcome the presumption of at-will employment under Texas law and therefore could not establish a protected property interest.  Rodriguez's opening brief does not address the sufficiency of her pleadings.  Instead, she cites the summary judgment standard and relies on summary judgment evidence to argue "[t]he [d]istrict [c]ourt erred when it found [she] did not demonstrate that she had a property interest in her continued employment." "A party forfeits an argument . . . by failing to adequately brief the argument on appeal." *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021).[2] Accordingly, we reject her third argument.

II.    *Sham Affidavit*

We now consider issues related to the grant of summary judgment.

---

[2] "There are numerous ways that a party can fail to adequately brief an argument" such as by not offering supporting argument, citation to authority, or relevant legal standards, or by not "address[ing] the district court's analysis and explain[ing] how it erred." *Rollins*, 8 F.4th at 397 n.1.

7

Rodriguez labels Viera's declaration a "sham" because of an inconsistency with his prior deposition testimony.  She insists Viera conceded in his deposition that Rodriguez received an overall rating of "4," and it was an honest evaluation at that time.  In her view, these statements "are markedly inconsistent" with Viera's declaration that the City terminated Rodriguez because it doubted her ability to lead due to employee complaints.

At summary judgment, "a district court must consider all the evidence before it and cannot disregard a party's affidavit merely because it conflicts to some degree with an earlier deposition." *Seigler*, 30 F.4th at 477 (quoting *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 893 (5th Cir. 1980)).  The "sham affidavit doctrine" is an exception to this rule that allows a district court to disregard "statements made in an affidavit that are 'so markedly inconsistent' with a prior statement as to 'constitute an obvious sham.'" *Winzer*, 916 F.3d at 472 (quoting *Clark v. Resistoflex Co.*, 854 F.2d 762, 766 (5th Cir. 1988)).  "[T]he bar for applying the doctrine is a high one, typically requiring affidavit testimony that is 'inherently inconsistent' with prior testimony." *Seigler*, 30 F.4th at 477 (quoting *Winzer*, 916 F.3d at 472).  "[T]he sham affidavit doctrine is inappropriate where an 'affidavit supplements, rather than contradicts' an earlier statement." *Winzer*, 916 F.3d at 473 (quoting *Clark*, 854 F.2d at 766).

We find that Viera's deposition testimony and declaration are not inherently inconsistent.  Viera's deposition testimony specified that City officials did not give Rodriguez a "4" rating.  Instead, the "4" came from the following: the City "agreed to take the average of the two ratings between the City and [County]."  His declaration does not directly contradict those statements, but instead explains that the City "became aware of information that raised serious doubt about Rodriguez's ability to effectively lead the District."  That information included employee complaints about

Rodriguez's managerial behavior. Viera declared that his "own observations of Rodriguez's performance caused [him] to recommend a change of District leadership." Because no inherent contradiction exists between Viera's deposition testimony and his declaration, the district court did not abuse its discretion in denying Rodriguez's motion to strike.

### III.    Protected Activity under the FLSA

An FLSA retaliation claim requires a plaintiff to make "a *prima facie* showing of: (1) participation in a protected activity under the FLSA; (2) an adverse employment action; and (3) a causal link between the activity and the adverse action." *Starnes v. Wallace*, 849 F.3d 627, 631–32 (5th Cir. 2017) (italics added). "To engage in protected activity, the plaintiff must make a 'complaint.'" *Id.* at 632 (quoting *Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 626 (5th Cir. 2008)). An "informal complaint to [an] employer may constitute protected activity," but we do not view every abstract grumbling or vague expression of discontent as an actionable complaint. *Hagan*, 529 F.3d at 625–26 (quotation omitted). The employee's "complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011).

The district court held that Rodriguez did not make a *prima facie* showing of participation in an FLSA-protected activity. Rodriguez argues that she engaged in protected activity when she emailed Assistant City Manager Viera in July 2021.

We evaluate Rodriguez's email to determine whether it is "sufficiently clear and detailed" to constitute an informal complaint. *Id.* Rodriguez listed the email's subject as "6% pay increase authorized by County Judge." Her email included a request for the status of her six percent

pay increase and discussed the vacant assistant director position. She added the following paragraph relating to overtime:

> Per our conversation today, Peter does not want to pay for my OT, even if we are still in a declared public health emergency and even if it is 100% reimbursed by FEMA. I am concerned because my approved pay increase from January, 2020 that the County Judge approved, still has not been processed. Can you please check on it again. Dante was given an 11% increase by the City without anyone even glitching, and he only has a few years of public health experience, while I have over 30 years' experience in public health. He has always received his increased without ever having to ask for his form 12 to be processed. I have not complained, until now but honestly I do feel like I am being treated differently. My OT was cut off at the same time he was moved to Parks and Recs. I hope that my OT was not contingent upon my AD receiving OT. These hours that I am expected to work are not normal "exempt status" hours, these are excessive due to the unprecedented pandemic. My pay increase from the Judge was 2% higher than Dante's, not unusual, as I am a higher level paid employee.

Rodriguez argues her email forms an "informal complaint" because she expressed that her overtime hours during the pandemic were "not normal 'exempt status' hours." The district court disagreed.

We interpret Rodriguez's email as an expression of discontent or disagreement and not a complaint of illegality. *See Lasater v. Texas A & M Univ.-Com.*, 495 F. App'x 458, 463 (5th Cir. 2012). The email largely discusses matters unrelated to overtime pay. When Rodriguez did mention overtime pay, it was not clear she was asserting rights protected by the FLSA. In other words, Rodriguez "did not frame any of [the] objections in terms of the potential illegality." *Hagan*, 529 F.3d at 626 (emphasis removed). Rodriguez therefore did not engage in protected activity because

her email was not an "informal complaint." The district court did not err in concluding the same.

### IV.    Comparators under Title VII and EPA

Rodriguez brought claims for sex-based pay discrimination under Title VII and the EPA. The district court dismissed each claim at summary judgment because, among other reasons, Rodriguez did not identify a proper comparator — that is, someone outside of her protected class that was paid more for substantially the same work. Rodriguez argues that determination was error.

Rodriguez's Title VII and EPA claims required her to identify a proper comparator. Indeed, a *prima facie* case of wage discrimination under Title VII requires a plaintiff to "show that he was a member of a protected class and that he was *paid less* than a non-member for work requiring substantially the same responsibility." *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 522 (5th Cir. 2008) (emphasis added) (quoting *Little v. Republic Refin. Co.*, 924 F.2d 93, 97 (5th Cir. 1991)). For a disparate treatment claim under Title VII, a plaintiff "must show that his circumstances are 'nearly identical' to those of a *better-paid employee* who is not a member of the protected class." *Id.* at 523 (emphasis added). As for a *prima facie* case under the EPA, a plaintiff must show "(1) her employer is subject to the Act; (2) she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions; and (3) she was *paid less* than the employee of the opposite sex providing the basis of comparison." *Chance v. Rice Univ.*, 984 F.2d 151, 153 (5th Cir. 1993) (emphasis added).

Rodriguez only named Gonzalez as a potential comparator. The summary judgment evidence shows the City never paid Rodriguez less than Gonzalez. Rodriguez all but concedes this point. Rodriguez has therefore

failed to offer *prima facie* evidence of her discrimination claims under Title VII and the EPA.  The district court did not err.

### V.      *Judge Canales's Affidavit*

Rodriguez argues "the [d]istrict [c]ourt did not give the factual assertions in Judge Canales'[s] affidavit much consideration to determine a dispute of material fact."  We find, to the contrary, that the district court's order expressly considers Judge Canales's affidavit in evaluating whether a fact question exists.  Rodriguez's argument is without merit.

### VI.     *Pretext for Retaliation*

The district court granted summary judgment to the City on Rodriguez's Title VII and EPA retaliation claims.  Rodriguez's opening brief does not challenge the dismissal of her EPA retaliation claim, so she has abandoned those arguments.  *See Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994).  We turn to Rodriguez's Title VII retaliation claim.

To show Title VII retaliation, "the initial burden rests with the employee to produce evidence: (1) that he participated in an activity protected by Title VII, (2) that his employer took an adverse employment action against him, and (3) that there is a causal connection between the adverse employment action and the protected activity."  *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 427 (5th Cir. 2017).  "The burden then shifts to the employer to articulate a legitimate non-retaliatory reason for the adverse employment action."  *Id.*  If the employer does so, "the burden shifts back to the employee to 'demonstrate that the employer's [stated] reason is actually a pretext for retaliation.'"  *Id.* (alteration in original) (quoting *Feist v. La., Dep't of Just., Off. of the Att'y. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013)).

Rodriguez argues the district court erred in holding that, although she established a *prima facie* case of retaliation, she failed to show the City's

legitimate, non-discriminatory reason for terminating her was mere pretext. The City's proffered reason for terminating Rodriguez was employee complaints. To support its justification, the City offered Assistant City Manager Viera's declaration discussing the employee complaints, Rodriguez's performance evaluations noting the employee complaints, and an HR investigation report detailing the employee complaints. Rodriguez argues the employee complaints cannot support a legitimate, non-discriminatory reason because they were unconfirmed and never brought to her attention. Rodriguez, though, neither disputes the existence of the complaints nor offers any legal authority that they are inadequate.

When evaluating a defendant's explanation, "[t]he question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive." *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995). "[E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason." *Little*, 924 F.2d at 97. Indeed, "a dispute in the evidence concerning . . . job performance does not provide a sufficient basis for a reasonable factfinder to infer that [the] proffered justification is unworthy of credence." *Id.* Because Rodriguez attempts to merely dispute the evidence concerning job performance, we find no error in the district court's determination that she did not establish pretext. *See id.*

### VII.   *Entitlement to Overtime*

The district court determined that Rodriguez was not entitled to overtime pay because she "was an exempt employee based on her annual salary, weekly pay, and job duties." Rodriguez insists she was not paid on a salary basis. Rodriguez, though, agrees that prior to the District's approval of the 2020 overtime memorandum she was a salaried employee who was exempt from the FLSA's overtime protections. She instead challenges the

No. 23-40520

district court's determination that she remained exempt after the overtime memorandum took effect. According to her, the City's approval of overtime converted her to a non-exempt, hourly employee.

The FLSA "guarantees that covered employees receive overtime pay when they work more than 40 hours a week." *Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, 43 (2023); 29 U.S.C. § 207(a)(1). The statute exempts employees who work "in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). "[A]n employee falls within the 'bona fide executive' exemption only if (among other things) he is paid on a 'salary basis.'" *Helix*, 598 U.S. at 43 (quoting 29 C.F.R. § 541.100(a)(1) (2015)).[3] An employee is paid on a salary basis if she "regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a).

The record reflects that, effective April 27, 2020, the City raised Rodriguez's yearly pay from $137,786.09 to $160,200. The City paid Rodriguez on a bi-weekly basis. Thus, beginning with her May 15, 2020 paycheck, she should have received 1/26 of $160,200. The summary judgment record contains Rodriguez's paystubs for the relevant period. After excluding added pay for overtime and a car allowance, Rodriguez's paystubs reveal that she received approximately $6,161.54 every two weeks from May 15, 2020 until the District raised her salary again in January 2021.

_____

[3] To qualify for an exemption from the FLSA's overtime regulations, employers must satisfy three tests: (1) duties test; (2) salary-level test; and (3) salary-basis test. *See Helix*, 598 U.S. at 44–45. The district court determined the City satisfied each test.

She therefore received 1/26 of her yearly pay every pay period during that time.

On January 4, 2021, the District increased Rodriguez's pay to $170,132 per year. Starting with her January 22, 2021 paycheck, she should have received 1/26 of that pay every two weeks regardless of her actual hours worked. The evidence shows that she did. Following her January 2022 raise to $176,009, Rodriguez received 1/26 of that yearly pay every pay period until her termination.

Viewing the evidence in the light most favorable to Rodriguez, the summary judgment evidence overwhelmingly shows she received "a predetermined amount constituting . . . part of the employee's compensation, which amount [was] not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a). We conclude that the City paid Rodriguez a guaranteed amount on a salary basis.

"An employer may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly-required amount paid on a salary basis." 29 C.F.R. § 541.604(a). In addition to her guaranteed salary, the City chose to voluntarily pay Rodriguez overtime for a limited time. This additional compensation did not destroy Rodriguez's exempt status because the City still paid her a guaranteed minimum amount on a salary basis.[4] The district court did not err.

---

[4] Rodriguez argues we should apply 29 C.F.R. § 541.604(b)'s reasonable relationship test. We decline to do so. "[I]f an employee is paid a salary plus additional compensation, the reasonable relationship test does not apply." *Venable v. Smith Int'l, Inc.*, 117 F.4th 295, 300 (5th Cir. 2024). We have determined Rodriguez received an annual

No. 23-40520

AFFIRMED.

---

salary that was "not subject to reduction" regardless of the numbers of hours or days worked. § 541.602(a); *see also Venable*, 117 F.4th at 299–300. We need not consider Section 541.604(b) or its reasonable relationship test.